396 A.2d 1198

COMMONWEALTH of Pennsylvania, Appellee,

v.

Andrew EASLEY, Appellant.

Supreme Court of Pennsylvania.

Argued Oct. 17, 1978.

Decided Jan. 24, 1979.

338

Benjamin Lerner, Defender, John W. Packel, Asst. Defender, Chief, Appeals Div., Patricia J. Pierce, Philadelphia, for appellant.

Edward G. Rendell, Dist. Atty., Steven H. Goldblatt, Deputy Dist. Atty. for Law, Robert B. Lawler, Chief, Appeals Div., Asst. Dist. Atty., H. Nathaniel Metz, Philadelphia, for appellee.

Before EAGEN, C. J., and ROBERTS, NIX, MANDERINO and LARSEN, JJ.

## OPINION OF THE COURT

EAGEN, Chief Justice.

Andrew Easley was convicted by a jury of simple assault, aggravated assault, and violating The Uniform Firearms Act.[1] Post-verdict motions were denied, and judgment of sentence of not less than five years nor more than ten years imprisonment was imposed on the aggravated assault conviction. The trial court also imposed a concurrent term of not less than one year nor more than three years imprisonment on the firearms convictions. An appeal was filed in the Superior Court, which affirmed the judgments of sentence. *Commonwealth v. Easley,* 245 Pa.Super. 41, 369 A.2d 283 (1976).[2] We granted a petition for allowance of appeal, and now reverse and remand for a new trial.

The prosecution arose from the shooting of Linda Wilson on September 5, 1974, in a public housing project in Philadelphia. At trial, the Commonwealth established, through the testimony of the complainant, Wilson, the following facts:

At approximately 5:30 p. m. on the above date, Wilson opened the door to her apartment in order to permit Easley, whom she knew as "Bo," to enter. Easley, accompanied by his brother,[3] entered the apartment and shoved the complainant against a refrigerator. He then pointed a gun at

1. Easley was convicted of unlawfully carrying a firearm without a license and unlawfully carrying a firearm on public streets or public property in a city of the first class. 18 Pa.C.S.A. § 6106 and 6108.

2. Cercone, J., filed a dissenting opinion in which Hoffman and Spaeth, JJ., joined.

3. Although Easley's brother was convicted of criminal charges stemming from this same incident, he was not a defendant at this trial.

her and threatened to "blow her brains out" because she allegedly beat his mother. Wilson fell to the kitchen floor, and Easley kicked her, threw hot grease on her, and struck her with a kitchen utensil. As the complainant lie on the floor, Easley attempted to fire the gun at her, but the bullets kept ejecting and falling on the floor. He then threw Wilson into the living room and struck her with a wine bottle. Easley next demanded the address of a person who previously lived with the complainant. When Wilson went into her bedroom to get the address, Easley pushed her onto a bed and shot her in the chest.

Easley was apprehended by the police as he left the building project. At the time, he had in his possession a .25 caliber automatic revolver, a clip for the weapon, and a box of ammunition.

Testifying in his own defense at trial, Easley claimed the shooting was in self-defense. He admitted visiting Wilson's apartment on the day of the shooting, but only to determine the veracity of rumors which related she had been involved in the beating of his mother. Easley accounted that he was conducting a friendly conversation with the complainant until he mentioned his mother's beating; that, at that time, she tried to "dash" a pan of grease on him; that he jumped out of the way; that she then took a gun from between the stove and sink and pointed it at him; that he then grabbed a wine bottle and threw it at her; that, as she flinched, he rushed her and grabbed the gun; and, that, as they tussled, the gun went off wounding her. According to Easley, he then emptied the gun of the remaining bullets, confiscated a box of ammunition from between the stove and sink, and exited the apartment in order to take the gun, the clip, and the ammunition to the police.

During cross-examination, the assistant district attorney asked Easley whether or not he told the authorities at the time of arrest what took place in Wilson's apartment. Easley responded he did not account his version of the shooting to the police who arrested him or to the investigating detective. He testified that he "asked them would it be all

right with him [a detective] if [he] remain[ed] silent" and that the detective said "[y]ou can do what you want to do." [4] Easley further testified the authorities did not warn him of his constitutional right to remain silent.[5] He did in fact, however, remain silent at the time of arrest.

4. The following are excerpts of Easley's cross-examination by the assistant district attorney:

"Q. Did you ever say anything to the police at all, ever?
"A. No, sir.
"Q. Did you ever tell the detective anything?
"A. No, sir.

\*  \*  \*  \*  \*  \*

"Q. Did you tell [the investigating detective] about the incident that happened at 2508 Jackson Street?
"A. Yes, sir, he asked me about it.
"Q. Did you say anything about it?
"A. Yes, sir. You know, I told him, I said that I would rather remain silent, you know, until I have a lawyer present.

\*  \*  \*  \*  \*  \*

"Q. You didn't tell the Detective what you told us today, did you?
"A. No, sir, no, sir. About the accident, no, sir.
"Q. You said you were going over there to tell the police, to get help from the police, didn't you?
"A. Yes, sir.
"Q. That was your reason for leaving the apartment; isn't that what you testified?
"A. Yes, sir.
"Q. Why didn't you then tell them?
"A. When the police stopped me they said, 'Halt,' and one officer said, 'Well, that's him,' or something like that there. And so, you know, I didn't say anything to them.
"Q. You didn't say anything to the Detective?
"A. No sir.
"Q. The detective wasn't there at the scene arresting you, was he?
"A. The detective tried to say—they was trying to say, you know, that I had shot Miss Linda Wilson. So, I was—you know, I didn't say anything to them.
I asked them would it be all right with him if I remain silent, and he said yes.
"Q. After you asked the detective that he didn't ask you any more questions, did he?
"A. No, sir. He said, 'You can do what you want to do,' just like that. And he went out the room."

5. Contrary to the Superior Court's reasoning which distinguished *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976) from the instant case on the basis that Doyle exercised his right to remain silent after being warned, we do not believe any reason exists to differentiate between situations where the right to remain silent is exercised following warnings and where it is exercised without warn-

Subsequently, in his closing argument to the jury, the assistant district attorney referred to Easley's silence at the time of his arrest. The prosecutor stated:

"He said he was going to walk down over to Wolf Street, and conveniently he was going to take the bullets, he was going to take the clip, he was going to take the gun and he was going to tell the police just what happened.

"Unfortunately for him someone called the police in the meantime and they catch him and his brother coming down the stairs.

"Now, at that time does he tell the police? He has the right to remain silent. You have heard that. You know that. But he told us here he is going to tell the police the whole thing was an accident. Does he ever tell anybody that?

"Now today he does. After he has access to all these notes for five or six months.

"[Defense Attorney]: Objection, Your Honor.

"The Court: Overruled."

Easley argues the trial court committed reversible error in permitting the assistant district attorney, over objection,[6] to comment adversely on Easley's exercise of his constitutional right to remain silent at the time of arrest and until taking the stand in his own defense.[7] We agree.

ings being given. Whether or not the exercise of the right to remain silent is induced by being advised of it at the time of arrest or is self-motivated by prior knowledge of it by the accused should not limit or extend the effect of exercising the right.

6. Although the defense attorney did not request a mistrial, we note the issue is properly preserved for appellate review. Instantly, defense counsel's objection to the prosecutor's comment was overruled, and the reason for the objection was obvious. Moreover, since the objection was overruled, the trial judge was in effect saying the assistant district attorney's comment was proper. As in *Commonwealth v. Maloney*, 469 Pa. 342, 352, 365 A.2d 1237, 1242 (1976) (plurality opinion), a motion for a mistrial under these circumstances would have been an exercise in futility.

7. Easley also argues the trial court erred: (1) in charging Easley had the burden of proving self-defense, and in failing to define that

An accused's constitutional privilege against self-incrimination is violated when a prosecutor in his summation to the jury makes reference to the accused's silence while in police custody. *Commonwealth v. Stafford*, 450 Pa. 252, 299 A.2d 590 (1973); cert. denied, 412 U.S. 943, 93 S.Ct. 2775, 37 L.Ed.2d 404 (1973); *Commonwealth v. Dulaney*, 449 Pa. 45, 295 A.2d 328 (1972). See also *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965); *Commonwealth v. Singletary*, 478 Pa. 610, 387 A.2d 656 (1978); *Commonwealth v. Haideman*, 449 Pa. 367, 296 A.2d 765 (1972). Instantly, the Commonwealth argues Easley's constitutional privilege to remain silent was not violated because the comment by the assistant district attorney during his summation to the jury was not intended to suggest to the jury that Easley's guilt could be inferred from his silence at the time of arrest, *Commonwealth v. Stafford*, supra, nor intended to impeach the exculpatory version of the shooting which Easley presented at trial. *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976) [hereinafter: *Doyle*]. According to the Commonwealth the reference to Easley's silence was specifically intended to rebut the impression, created by Easley during direct examination, that he exited Wilson's apartment intending to summon the police. The Commonwealth asserts the use of Easley's silence at the time of arrest for this limited purpose is not an infringement upon

burden; (2) in refusing defense counsel's request for a charge on justification under The Uniform Firearms Act; (3) in overemphasizing, in a prejudicial fashion, Easley's interest in the outcome of the case; (4) in misstating Easley's testimony in such a manner as to make it appear incredible; (5) in suggesting there was no basis in the record for questioning the credibility of the complainant; (6) in allowing the prosecutor to tell the jury that potential witnesses resided in California, and that the jury should not consider their absence in any way unless otherwise instructed by the judge; (7) in charging the jury it could not draw an inference from evidence not produced at trial; (8) in denying Easley's requested charge that the jury is permitted to draw a negative inference from the failure of the prosecution to call a material witness to testify; and, (9) in approving the prosecution's argument that the jury could infer that, had he been called, Easley's brother's testimony would have been unfavorable to Easley. In view of our disposition of this case, we need not pass upon these alleged errors.

Easley's constitutional right to remain silent as that right has been interpreted by the United States Supreme Court and this Court.[8]

While the district attorney's comment may have been intended to impeach Easley's claim that he fled the apartment intending to summon the police, we believe the comment, fairly read, implied to the jury that Easley's silence at the time of arrest was evidence of guilt. *Commonwealth v. Stafford,* supra. In so commenting, the prosecutor suggested the jury could infer guilt from Easley's protracted silence, rather than merely infer Easley's testimony concerning his intention to cooperate with the authorities at the time of his arrest lacked credibility. To approve the prosecutor's comment in the instant case would penalize Easley for exercising his constitutional privilege against self-incrimination. Therefore, we hold the trial court committed reversible error in permitting the assistant district attorney

8. Support for an argument of this nature is found in *Doyle.* There, the United States Supreme Court held the use for impeachment purposes of an accused's silence at the time of arrest, after receiving *Miranda* warnings, violated his right to remain silent. The Court, however, noted in its opinion that "the fact of post-arrest silence could be used by the prosecution to contradict a defendant who testified to an exculpatory version of events and claims to have told the police the same version upon arrest. In that situation the fact of earlier silence would not be used to impeach the exculpatory story, but rather to challenge the defendant's testimony as to his behavior following arrest." *Doyle,* supra at 619 n. 11, 96 S.Ct. 2245 n. 11. See *United States v. Fairchild,* 505 F.2d 1378 (5th Cir. 1975).

While Easley did *not* claim to have told his version of the events to the police, the Commonwealth asserts his trial testimony, that he exited the apartment *intending* to summon the police, created the same type of impression noted by the United States Supreme Court in *Doyle.* In light of our determination that the prosecution's reference to Easley's silence suggested an inference of guilt, we need not decide today whether or not the prosecution may make reference to an accused's silence at arrest for the limited purposes of attacking the defendant's testimony regarding his behavior following arrest or regarding his *intended* behavior at time of arrest. Although the dicta of the United States Supreme Court in *Doyle* lends some support for use of the accused's silence for these limited purposes under federal constitutional law, we note the use of an accused's silence in such a manner is still an undecided federal constitutional, state constitutional, and state evidentiary issue.

over timely objection to comment adversely on Easley's exercise of his right to remain silent.

Order and judgments reversed and a new trial is ordered.

O'BRIEN, J., and POMEROY, former J., did not participate in the decision of this case.

LARSEN, J., dissents.