454 A.2d 537

COMMONWEALTH of Pennsylvania

v.

Stephen TURNER, Appellant.

Supreme Court of Pennsylvania.

Dec. 31, 1982.

Flora L. Becker, Philadelphia, Court-appointed, for appellant.

Robert B. Lawler, Chief, Appeals Div., Mark Gurevitz, Philadelphia, for appellee.

Before O'BRIEN, C.J., and ROBERTS, NIX, LARSEN, FLAHERTY, McDERMOTT and HUTCHINSON, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

This is a direct appeal[1] from the judgment of sentence, following appellant's conviction by a jury of voluntary manslaughter and possession of an instrument of crime, but acquittal of murder.

Appellant was charged in the shooting death of Richard Hilton, occurring in a Philadelphia bar. Conflicting evidence was offered as to whether the gun was fired during the course of a struggle or whether appellant, having over-

1. Reassigned to this writer on September 22, 1982.

powered Hilton, stood over him and shot him three times. Appellant testified in his own behalf, maintaining that the shooting was in self-defense. As the only witness to provide exculpatory testimony, he testified that Hilton put a gun to his shoulder, whereupon he grabbed Hilton, disarmed him, and, then noticed a drug dealer with whom he had been negotiating during the course of the evening, standing behind Hilton with a gun. Thinking the dealer had fired at him, appellant fired Hilton's gun once, striking Hilton. Appellant, firing the gun over his own shoulder because he heard two additional shots fired at him, ran from the scene. Hilton was hit three times and died from these wounds.

Following appellant's conviction and the denial of post-verdict motions, he was sentenced to a term of five to ten years imprisonment. This appeal followed.

■ Appellant contends that a reference by the prosecutor, in his cross-examination of appellant, to appellant's silence before trial constitutes reversible error warranting the grant of a new trial. We agree.

After appellant stated, on cross-examination, that he saw the drug dealer shooting at him, the prosecutor asked: "Did you ever tell the police that somebody was shooting at you?" Appellant had not, at any time, given a statement to the police. This in-court testimony was the first occasion on which appellant offered an exculpatory version of the shooting. Before appellant answered, defense counsel objected to the question and, at sidebar, moved for a mistrial. The trial judge sustained the objection but denied the motion for mistrial, giving instead cautionary instructions to the jury *sua sponte*.[2] During the course of the trial, there were no further prosecutorial references to appellant's silence.

2. These instructions were:
   Ladies and gentlemen of the jury, I told you at the beginning of this trial, when I gave preliminary instructions, the only evidence you are to consider when you deliberate as to your verdict is what you hear from this witness stand. I told you specifically, as I recall, and I reiterate it now, that questions asked by either of the lawyers or even the court are not evidence. A question was just asked before we went to sidebar by the Assistant District Attorney for

The Commonwealth contends that the cautionary instruction, as evidenced by the verdict itself, was effective, rendering any error harmless. That is, the Commonwealth argues that the jury, by returning a verdict of voluntary manslaughter, found appellant's assertion of self-defense credible though unreasonable, and rejected the Commonwealth's charge of premeditated, intentional killing, returning a verdict under subsection (b) of the Voluntary Manslaughter statute, "Unreasonable belief killing." [3]

The United States Supreme Court has recently established the constitutional permissibility of references at trial to post-arrest silence where the silence in question occurred prior to the giving of *Miranda* warnings. *Fletcher v. Weir,* 455 U.S. 603, 102 S.Ct. 1309, 71 L.Ed.2d 490 (1982). This holding is grounded upon the view that the giving of warnings mandated by the Court's decision in *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), implicitly induces the accused to remain silent, and absent the giving of the warnings, there is no governmental inducement to remain silent. Accordingly, as a matter of federal constitutional law, the use of pre-*Miranda* silence is permissible to impeach the defendant's trial testimony of exculpatory events. In this Commonwealth, however, we have traditionally viewed such references to the accused's silence as impermissible for a variety of reasons.

The view of this Court that there exists a strong disposition on the part of lay jurors to view the exercise of the Fifth Amendment privilege as an admission of guilt is well

this witness, the defendant. It has not been answered. It was objected to, I sustained the objection, and that means you are to disregard that question, or I say to you now you are to disregard that question entirely, as though it had never been asked.

**3.** Voluntary Manslaughter

. . . . .

(b) *Unreasonable belief killing justifiable.* A person who intentionally or knowingly kills an individual commits voluntary manslaughter if at the time of the killing he believes the circumstances to be such that, if they existed, would justify the killing under Chapter 5 of this title [self-defense], but his belief is unreasonable. 18 Pa.C.S. § 2503(b).

established. *See Commonwealth v. Singletary,* 478 Pa. 610, 612, 387 A.2d 656, 657 (1978); *Commonwealth v. Greco,* 465 Pa. 400, 404, 350 A.2d 826, 828 (1976); *Commonwealth v. Haideman,* 449 Pa. 367, 371, 296 A.2d 765, 767 (1972). In *Commonwealth v. Haideman, supra,* we stated:

> "We would be naive if we failed to recognize that most laymen view an assertion of the Fifth Amendment privilege as a badge of guilt." *Walker v. United States* [404 F.2d 900 (5th Cir.1968)], . . . It is clear that "[t]he privilege against self-incrimination would be reduced to a hollow mockery if its exercise could be taken as equivalent either to a confession of guilt or a conclusive presumption of perjury." *Slochower v. Board of Higher Ed. of N.Y.* [350 U.S. 551, 76 S.Ct. 637, 100 L.Ed. 692].

*Commonwealth v. Haideman,* 449 Pa. 367, 371, 296 A.2d 765, 767 (1972) (citations omitted).

The prejudice to the defendant resulting from reference to his silence is substantial. While it is efficacious for the Commonwealth to attempt to uncover a fabricated version of events, in light of the "insolubly ambiguous" nature of silence on the part of the accused, *Doyle v. Ohio,* 426 U.S. 610, 617, 96 S.Ct. 2240, 2244, 49 L.Ed.2d 91, 97 (1976), we do not think it sufficiently probative of an inconsistency with his in-court testimony to warrant allowance of any reference at trial to the silence. Accordingly, the Commonwealth must seek to impeach a defendant's relation of events by reference only to inconsistencies as they factually exist, not to the purported inconsistency between silence at arrest and testimony at trial. Silence at the time of arrest may become a factual inconsistency in the face of an assertion by the accused while testifying at trial that he related this version to the police at the time of arrest when in fact he remained silent. *Doyle v. Ohio, Id.* at 619, n. 11, 96 S.Ct. at 2245, n. 11, 49 L.Ed.2d at 98, n. 11. Absent such an assertion, the reference by the prosecutor to previous silence is impermissible and reversible error.

Article 1, § 9 of the Pennsylvania Constitution provides that the accused "cannot be compelled to give evidence

against himself . . . ," a right which is parallel to the federal constitutional right under the Fifth Amendment. We do not think that the accused should be protected only where there is governmental inducement of the exercise of the right. We acknowledge that this position is more restrictive than that taken by the United States Supreme Court in *Fletcher v. Weir, supra.* However, we decline to hold, under the Pennsylvania Constitution, that the existence of *Miranda* warnings, or their absence, affects a person's legitimate expectation not to be penalized for exercising the right to remain silent. In *Commonwealth v. Easley,* 483 Pa. 337, 396 A.2d 1198 (1979), this Court in a footnote stated:

> [W]e do not believe any reason exists to differentiate between situations where the right to remain silent is exercised following warnings and where it is exercised without warnings being given. Whether or not the exercise of the right to remain silent is induced by being advised of it at the time of arrest or is self-motivated by prior knowledge of it by the accused should not limit or extend the effect of exercising the right.

*Id.,* 483 Pa. at 341–42 n. 5, 396 A.2d 1200–01. n. 5. *See also Commonwealth v. Singletary,* 478 Pa. 610, 387 A.2d 656 (1978).

We also reject the argument by the Commonwealth that the reference was harmless error as evidenced by the fact of the reduced verdict of voluntary manslaughter, i.e. by returning a voluntary manslaughter verdict, the jury purportedly indicated its belief of the appellant's version of events and was not affected in the decision making process by the prosecutor's improper question.

▮ Such error is "harmless only if the appellate court is convinced beyond a reasonable doubt that the error is harmless". *Commonwealth v. Story,* 476 Pa. 391, 405–406, 383 A.2d 155, 162 (1978). Unless the court determines that the error could not have contributed to the verdict, the "reasonable possibility" that the error did contribute to the verdict negates any notion of harmlessness. *Id.,* 476 Pa. at 409, 383 A.2d at 164.

That requirement is not fulfilled in this case. In order to draw conclusions from the verdict about what the jury believed, the Commonwealth's hypothesis about the jury's state of mind would have to be a necessary and sufficient explanation of the verdict. But the most obvious of alternative explanations presents itself: the jury may have delivered a compromise verdict. The jury may have decided that the Commonwealth's case was significantly bolstered by the reference to appellant's post-arrest silence and that it would be appropriate to impose a verdict more severe than acquittal but less severe than murder. *See Commonwealth v. McClendon,* 478 Pa. 108, 111, 385 A.2d 1337, 1339 (1978). Verdicts are arrived at after many objective and subjective considerations and do not always conform perfectly to the instructions given by the court. Thus, no sound conclusions can be drawn from the verdict about "what the jury believed" concerning appellant's credibility. To attempt to draw such conclusions is to speculate. As we cannot be sure that the jury would have resolved the issue in the same manner absent the improper reference, we are not convinced beyond a reasonable doubt that the error did not contribute to the verdict. Far from being harmless error, the reference may well have impermissibly contributed to the verdict.

Accordingly, the judgment of sentence of the Court of Common Pleas is vacated and the case is remanded for a new trial.[4]

NIX, J., files a dissenting opinion.

McDERMOTT, J., files a dissenting opinion in which HUTCHINSON, J., joins.

4. Due to our disposition of the issue regarding prosecutorial reference to post-arrest silence, we need not address the other issues raised by appellant: first, whether trial counsel was ineffective in failing to request a charge of involuntary manslaughter, and, whether lack of judicial uniformity in terms of when the instruction was to be given violated appellant's equal protection and due process rights; second, whether the trial court erred in denying appellant's motion for a new trial following the prosecutor's reference to a hearsay statement by decedent, and third, whether trial counsel was ineffective for stipulating to admission of appellant's past convictions and for failing to explain the ramifications of this stipulation to appellant.

NIX, Justice, dissenting.

The majority premises its grant of relief on the theory that there was an impermissible reference to appellant's post-arrest silence. I believe that the real question presented is whether, prior to the court's corrective action, the alleged reference reached the level of an impermissible use of the defendant's post-arrest silence. Since I believe that it did not, I dissent.

McDERMOTT, Justice, dissenting.

The Fifth Amendment is a protection against compulsion. When one is not compelled by force, fear or favor to speak, but does so voluntarily for his own reasons, at a time of his own choosing, there is no earthly reason why he should not be subject to the same searching inquiry as any other witness. The Supreme Court in *Fletcher v. Wier,* 455 U.S. 603, 102 S.Ct. 1309, 71 L.Ed.2d 490 (1982), enunciated that principle saying:

> In *Jenkins v. Anderson,* 447 U.S. 231, 239, 65 L.Ed.2d 86, 100 S.Ct. 2124 (1980), a case dealing with pre-arrest silence, we said:
>
>> "Common law traditionally has allowed witnesses to be impeached by their previous failure to state a fact and circumstances in which that fact naturally would have been asserted. 3A J. Wigmore, Evidence, § 1042, p. 1046 (Chadbourne Rev.1970). Each jurisdiction may formulate its own rules of evidence to determine when prior silence is so inconsistent with present statements that impeachment by reference to such silence is probative."

455 U.S. at 606, 102 S.Ct. at 1311, 71 L.Ed.2d at 493–94.

The common law, based on common experience, recognized, as does the Supreme Court, that silence has its risks. That facts and circumstances may indeed have natural, human inconsistency with silence. Moreover, and more important, "silence" is not the subject of the constitutional provision. The Fifth Amendment is not an exhortation to silence or a celebration of its golden qualities. It protects it

when exercised, but it does not enforce or encourage silence. Hence, despite its enigmatic twist that *Miranda* "warnings" are an inducement to silence, the Supreme Court is at pains to say that the federal Constitution does not prohibit mention of the natural inconsistency that may exist between silence and the facts and circumstances of a case. *Jenkins,* 447 U.S. at 239, 100 S.Ct. at 2129; *Fletcher,* 455 U.S. at 606, 102 S.Ct. at 1311, 71 L.Ed.2d at 493–94.

The Supreme Court therefore left the matter to the states in instances where no warnings or inducements to silence exist. *Id.* Given this opportunity, the majority in this case, continues its adventures in uncharted puddles. The majority explicitly acknowledges that the rule in Pennsylvania is more restrictive than the position taken by the Supreme Court. In doing so, I believe the Court has turned a cloak into a dagger.

That one may remain silent in the face of accusation is a personal option, and a constitutional privilege. There is a difference, however, between silence and compulsion. Compulsion is never permissible. Silence is a choice, a choice, depending upon the facts and circumstances, that may contain risks.

The majority confuses compulsion with "silence". There is a constitutional protection against compulsion, silence is a choice and a waivable privilege. So long as one maintains silence, we must, as far as possible, protect it from unfavorable inference. When one chooses to speak, however, we owe no duty to protect against any natural inconsistency that may exist between former elected, self-imposed silence and trial testimony.

In this case, appellant, charged with murder, voluntarily took the witness stand to offer his version. No one forced or dragged him. He freely chose to speak. He offered that he fired in self-defense because someone was shooting at him. On cross-examination he was asked:

Did you ever tell the police that somebody was shooting at you?

The majority finds this an impermissible reference to appellant's acknowledged "silence" at arrest. It is clear, that at no time, at arrest or trial, was appellant induced, forced, promised or favored to speak. He did so because he wanted to, when he wanted to. To protect him from whatever inconsistency that elected silence may have created is to give selected sanctuaries immune from inquiry, from the truth testing process, and from the common experience of men. *See Commonwealth v. Alicea*, 498 Pa. 575, 582–583, 449 A.2d 1381, 1385 (1982) (McDermott, J., dissenting).

The Supreme Court, not known for a heavy hand in these matters, has adopted the rule. In each one of these avant garde minority positions we espouse, we retire more of the small tools available to the truth testing process. Here, a shield has become a weapon. As Mr. Justice Stevens said in a similar situation:

This is a case in which the defendants' silence at the time of their arrest was graphically inconsistent with their trial testimony that they were the unwitting victims of a "frame-up" in which the police did not participate. If defendants had been framed, their failure to mention that fact at the time of their arrest is almost inexplicable; for that reason, under accepted rules of evidence, *their silence is tantamount to a prior inconsistent statement and admissible for purposes of impeachment.*

*Doyle v. Ohio*, 426 U.S. 610, 621–22, 96 S.Ct. 2240, 2246, 49 L.Ed.2d 91 (1976) (Stevens, J., dissenting) (emphasis supplied) (footnote omitted).

Silence to save oneself or one's friends is not always invoked to thwart oppressors; it can be a greedy, self-centered thing of terrible consequence. The Constitution, should not be distorted into a manual for escape artists to ward off every possible threat.

HUTCHINSON, J., joins in this dissenting opinion.