CAVANAUGH, Judge:
Thomas Cancilla appeals directly from the following convictions and judgment of sentence: thirty (30) days to six (6) months imprisonment for false alarms to agencies of public *319 safety, two years probation for terroristic threats and no further penalties for recklessly endangering another person.
We review the following issues: (1) whether the evidence was sufficient to support appellant’s convictions for terroristic threats and recklessly endangering another person and (2) whether appellant is entitled to a new trial due to defense counsel’s failure to object to the prosecutor eliciting references to and commenting upon appellant’s post-arrest silence. Although the evidence was sufficient for a conviction for terroristic threats, we find it insufficient for recklessly endangering another person. Our review also indicates that appellant is entitled to a new trial on the second argument. For the reasons set forth below, we vacate and remand for a new trial.
The facts establish that on March 5, 1993 a 911 Emergency System dispatcher received a bomb threat from a caller who stated, “There is a bomb in the Springdale Citizens High Rise. You better hurry.” The 911 dispatcher determined the exact location of the call to be from a phone booth on the 500 block of 14th Street, in the City of Arnold, Westmoreland County. An Arnold City police officer, notified of the caller’s location, immediately arrived and apprehended appellant as he was exiting the phone booth from where the bomb threat had originated.[1] Subsequently, appellant was taken to the police station, questioned, arrested and then placed in custody.
At the scene of the bomb threat, emergency response crews evacuated all eighty to ninety residents of the seven-story Springdale Citizens High Rise. Although evacuation of this building housing senior citizens and handicapped residents was orderly, several residents were treated for excitement while two were transported by ambulance to an evacuation *320 center and one resident was taken to the hospital. Subsequently, no bomb was found in the building.
Following appellant’s conviction and denial of post-verdict motions, he was sentenced to a term of thirty (30) days to six (6) months incarceration followed by two (2) years probation. This appeal followed.
In analyzing the first issue, we begin with our standard of review:
we review the evidence in the light most favorable to the Commonwealth, which has won the verdict. We then determine whether the evidence was sufficient to permit the finder of fact to determine that each and every element of the crime charged was established beyond a reasonable doubt.
Commonwealth v. Campbell, 425 Pa.Super. 514, 625 A.2d 1215 (1993) (citations omitted).
To obtain a conviction for terroristic threats, the Commonwealth must prove: (1) the defendant made a threat to commit a crime of violence and (2) such threat was communicated with intent of terrorizing or with reckless disregard of the risk of causing terror. Id.
The crime of terroristic threats is defined as:
A person is guilty of a misdemeanor of the first degree if he threatens to commit any crime of violence with intent to terrorize another or to cause evacuation of a building, place of assembly, or facility of public transportation, or otherwise to cause serious public inconvenience, or in reckless disregard of the risk of causing such terror or inconvenience.
18 Pa.C.S.A. § 2706. The Official Comment to this section states that “[t]he purpose of the section is to impose criminal liability on persons who make threats which seriously impair personal security or public convenience.” Id., Official Comment — 1972.
Furthermore, the term “crime of violence” is defined in the Crimes Code as:
*321 “Crime of violence.” Any of the following crimes, or an attempt, a solicitation or a conspiracy to commit any of the same, namely: murder, voluntary manslaughter, rape, aggravated assault, robbery, burglary, involuntary deviate sexual intercourse, arson, extortion accompanied by threats of violence, assault by prisoner, assault by life prisoner and kidnapping.
18 Pa.C.S.A. § 6102. Arson, defined in 18 Pa.C.S.A. § 3301, imposes criminal penalties on one who “intentionally starts a fire or causes an explosion.” Id.
In Commonwealth v. Speller, 311 Pa.Super. 569, 458 A.2d 198 (1983), we sustained an appellant’s conviction for terroristic threats when he shouted at his neighbors that he would burn and/or blow up their house. Although the appellant did not set fire to or destroy the neighbor’s home, we found the statement to be a threat to commit a crime of violence. Id. at 574, 458 A.2d at 201. Furthermore, in Commonwealth v. Hudgens, 400 Pa.Super. 79, 91, 582 A.2d 1352, 1358 (1990), we held that the ability to carry out the terroristic threat was not an essential element of the crime. Moreover, in Commonwealth v. Hardwick, 299 Pa.Super. 362, 445 A.2d 796 (1981), we found the purpose of making terroristic threats a crime was to prevent “psychological distress which follows from an invasion of another’s sense of personal security.” Id. at 365, 445 A.2d at 797. This court has, however, recognized that not all threats are criminal. In Commonwealth v. Anneski, 362 Pa.Super. 580, 525 A.2d 373 (1987), an appellant, while in a heated argument, threatened to use a gun to kill a neighbor. There we found the evidence insufficient to convict her of terroristic threats since she spoke in anger, thought that her children had been struck by the neighbor and she feared for the future safety of her children. Id. at 586, 525 A.2d at 376.
In the case at bar, we view the evidence most favorably for the Commonwealth which established that appellant placed a call to the 911 Emergency System and stated, “There is a bomb in the Springdale Citizens High Rise. You better hurry.” Furthermore, the Commonwealth showed that the Springdale Citizens High Rise is a retirement home occupied *322 by mostly senior citizens and handicapped residents. From this evidence, the jury could find beyond a reasonable doubt that appellant’s call that an incendiary device was planted in the building threatened a crime of violence against the residents and was communicated with the intent to terrorize or with reckless disregard of the risk of causing terror.
The appellant argues that since no bomb was found, no one was hurt and the evacuation of the building proceeded in an orderly manner, the call to 911 was merely “a false alarm. Appellant seems to suggest that he did not make a terroristic threat since the “false alarm” for a bomb scare did not materialize. Appellant’s argument is contrary to the Crimes Code. Applying the definitions of crime of violence and arson, an explosion caused by a bomb would qualify as the violent crime of arson. Terroristic threats as defined in 18 Pa.C.S.A. § 2706 encompasses threats to commit one of the listed crimes of violence, which includes arson. Moreover, appellant’s call caused the evacuation of a building which is a result of threats specifically contemplated by the statute. Appellant’s message was both a threat that a bomb was in the building and that it was ready to explode.
Furthermore, appellant’s mere false alarm argument is contrary to our case law. Similar to Speller, supra, appellant’s call that a bomb was set in the Springdale Citizens High Rise was sufficient to constitute a threat to commit arson. Like Hudgens, supra, appellant’s inability to have actually carried out the bombing was not essential to a conviction for terroristic threats. Appellant’s conduct was exactly the type of threat our cases have held is prohibited by the Crimes Code. His call seriously impaired personal security and public convenience since all the residents had to be evacuated. Similar to Hardwick, supra, we conclude that appellant’s act caused psychological distress which followed the invasion of the senior residents’ sense of personal security. Unlike the appellant in Anneski, supra, appellant in the case at bar has no basis to mitigate his terroristic threat.
*323 Appellant further argues the evidence was insufficient to convict for the crime of recklessly endangering another person. That crime is defined as:
A person commits a misdemeanor of the second degree if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury.
18 Pa.C.S.A. § 2705. In Commonwealth v. Trowbridge, 261 Pa.Super. 109, 395 A.2d 1337 (1978), we found the evidence insufficient to convict for the above crime when the evidence merely established that an appellant pointed an unloaded BB gun at two police officers. In that case we stated:
Recklessly endangering another person is a crime of assault under chapter 27 of the Crimes Code. The common law of criminal assault required that the defendant have the actual present ability to inflict a battery or otherwise cause injury (footnote omitted).
Id. at 114, 395 A.2d at 1339. We also wrote, “Danger, and not merely the apprehension of danger, must be created. Therefore, we think that § 2705 retains the common law assault requirement of actual present ability to inflict harm (footnote omitted).” Id. at 115, 395 A.2d at 1340. In Trowbridge, we held that an appellant who merely aimed an unloaded BB gun did not possess an actual present ability to create a danger of death or serious bodily harm. Id.
In the case at bar, we again view the evidence in the light most favorable to the Commonwealth. Appellee established that all eighty to ninety residents had to be evacuated from the seven-story Springdale Citizens High Rise; during the evacuation several residents were treated for excitement, two were transported by ambulance to an evacuation center and one resident was taken to the hospital. From this evidence the Commonwealth argues that appellant possessed the actual present ability to inflict serious bodily harm because the evacuation from the bomb threat could have caused a panic situation.[2]
*324 Our review indicates the Commonwealth presented insufficient evidence for the jury to find beyond a reasonable doubt that appellee committed the crime of recklessly endangering another person. Common law criminal assault and/or battery does not encompass a false bomb threat communicated over a telephone since the appellant did not possess the actual present ability to inflict serious bodily harm against the residents. Although appellant’s threat may have created an apprehension of danger, the absence of an actual bomb did not create a real danger of an assault and/or battery. See Trowbridge, supra.
Appellant next claims that trial counsel was ineffective for failing to object the prosecutor’s use of appellant’s post-arrest silence. Initially, we state the standard of review:
To prove ineffectiveness of counsel, [ajppellant must show that his assertion is one of arguable merit, that the attorney had no reasonable basis for his/her action or inaction, and that the attorney’s action or inaction was prejudicial to the client.
Commonwealth v. Clark, 533 Pa. 579, 626 A.2d 154 (1993).
In the case at bar, appellant testified at trial that when he arrived at the phone booth where the bomb threat originated, he saw another man exit the booth and leave in a pick-up truck. Appellant’s claim for defense counsel’s ineffectiveness at trial is based upon the following exchange he had with the prosecutor:
BY MR. LINSENMAYER:
Q. Did you tell any other cops about the guy in the truck?
A. Well, I was only arrested by Cimino.
Q. They took you to New Ken [New Kensington] lock up?
A. Yes.
*325 Q. Got other cops there?
A. Yes.
Q. Wouldn’t you scream at them, I didn’t do it, the guy
in the truck did?
A. No.
(N.T. 10/26-27/93, at 94). Moreover, during closing argument, the prosecutor also stated:
He didn’t say anything on the scene. He got back to the police station, didn’t say a word. Sure he had the right to remain silent.
But would you remain silent if you were being charged with a crime and you know that somebody in a pickup truck did it? We would be screaming the entire way, You blankityblank-blank cop, it was the guy, it was the blankity-blank guy in the blankity-blank pickup truck.
I enlisted in the Navy when I was 17 and I was out in the fleet for three and a half years. Sometimes I resort back to my words that I used at sea, and I use a lot of blankityblanks, and I would suggest that most people in that situation would have really proclaimed their innocence.
(Id. at 161-162). We find that appellant has satisfied the requirements for a claim of ineffectiveness of counsel.
In Commonwealth v. Turner, 499 Pa. 579, 581, 454 A.2d 537, 538 (1982), when a defendant at trial claimed self-defense for a homicide, the prosecutor asked, “Did you ever tell the police that somebody was shooting at you?” The Court held this to be impermissible since lay jurors may mistakenly view exercising the right to remain silent after arrest as an implicit admission of guilt. Id. at 582, 454 A.2d at 540. In Commonwealth v. Clark, 533 Pa. 579, 626 A.2d 154 (1993), the Court, following Turner, held that a prosecutor made an impermissible reference to defendant’s post-arrest silence when he asked, “Did you ever think of telling the police what happened?” Id. at 583, 626 A.2d at 156. The Court also found no reasonable basis for defense counsel’s failure to object to the impermissible reference which deprived the defendant of a cautionary instruction. Id. at 586, 626 A.2d at 157. The Court concluded *326 that “an impermissible reference to the accused’s post-arrest silence is innately prejudicial, [footnote omitted].” Id. at 587, 626 A.2d at 158.
In Commonwealth v. Easley, 483 Pa. 337, 342, 396 A.2d 1198, 1201 (1979), error was found when a prosecutor, during his summation, argued:
Now, at that time [after being arrested] does he tell the police? He has the right to remain silent. You heard that. But he told us here he is going to tell the police the whole thing was an accident. Does he ever tell anybody that? Now today he does.
Id. The Court held that “the privilege against self-incrimination is violated when a prosecutor in his summation to the jury makes a reference to the accused’s silence while in custody.” Id. at 343, 396 A.2d at 1201.
Instantly, we find appellant’s claim for ineffectiveness of counsel has merit. The prosecutor’s question concerning appellant’s failure to scream at the police in the New Kensington Prison, “I didn’t do it, the guy in the truck did,” was an impermissible reference to appellant’s right to post-arrest silence. Analogous to Turner, supra, we find the jury may have mistakenly concluded that appellant’s right to remain silent was an implicit admission of guilt. We also find the prosecutor’s summation, perhaps more egregious than the summation in Easley, supra, was an impermissible reference to appellant’s silence while in custody. We further find that appellant’s trial counsel had no reasonable grounds for remaining silent and failing to object to these impermissible references. Defense counsel is deemed to be aware of the state of the law regarding this issue. See Easley, supra.
Under the circumstances we need not review appellant’s other claims of ineffectiveness of counsel or trial court errors. See Commonwealth v. Hyneman, 424 Pa.Super. 415, 622 A.2d 988 (1993).
Although we remand this case for a new trial, we also suggest that the lower court re-examine whether appellant’s witness, Dr. El-Jaroudi, is qualified to give expert testimony. *327 Although the issue of whether a witness is qualified to express an expert opinion is generally a matter within the discretion of the trial court, we remind the court that:
Pennsylvania law imposes a liberal standard for qualification of an expert, allowing a witness to testify as an expert if he has any reasonable pretension to specialized knowledge on the subject under investigation. The weight to be given to his evidence is for the factfinder.
In re Glosser Bros., Inc., 382 Pa.Super. 177, 555 A.2d 129 (1989), appeal discontinued 525 Pa. 600, 575 A.2d 566 and Petition of Wurzburger, 525 Pa. 603, 575 A.2d 569 (1990). See generally Gloviak v. Tucci Constr. Co., 415 Pa.Super. 123, 608 A.2d 557 (1992) (where we upheld as proper the lower court’s recognition that appellee’s witness could give expert testimony since he investigated the defective structure and possessed both a bachelor’s degree in civil engineering and a master’s degree in structural engineering) and Palmer v. Lapp, 392 Pa.Super. 21, 572 A.2d 12 (1990) (where we reversed the lower court’s recognition of appellee’s witness as qualified to give expert opinion since her only involvement in the valuation of an antique was the typing of the appraisal for her employer, she had never before appraised that type of antique, and her efforts amounted to nothing more than testifying that she agreed with her employer’s appraisal).
In sum, we arrest judgment as to the conviction for recklessly endangering another person; deny motion for arrest of judgment as to terroristic threats; and we grant a new trial.[3]
Jurisdiction relinquished.
WIEAND, J., files a concurring and dissenting statement.

. The prosecution putatively possessed and promised the jury at trial that they would hear the 911 Emergency System tapes which recorded the initial bomb threat and a later recorded call to 911 with the identical words appellant was asked to make while at the police station (N.T. 10/26/93, at 14). In light of such promises to the jury, we are perplexed by the prosecution's complete failure to introduce these tapes at trial (Id. at 157-58). Moreover, we are equally mystified as to the prosecution's complete failure to present expert analysis on the tapes or expert testimony regarding the identity of the caller (Id. at 14 & 158).

. The Commonwealth’s argument is based upon language from Trow-bridge, where we noted that:
*324 the resulting fear or apprehension of danger itself creates an actual danger of death or serious bodily harm to others, such as where a gun is pointed at a person driving a passenger-filled car at fifty miles 'per hour on a public highway, since the requisite danger comes from the loss of vehicular control in such a panic situation.
*325 Id. 261 Pa.Super. at 116 n. 14, 395 A.2d at 1341 n. 14 (citations omitted).

. Normally, when this Court finds insufficient evidence lor a conviction for recklessly endangering another person, we reverse the judgment of sentence and discharge an appellant. See Commonwealth v. Trowbridge, 261 Pa.Super. 109, 395 A.2d 1337 (1978). In this case, since appellant is granted a new trial, we note that no further proceedings can be pursued against appellant on the charge of recklessly endangering another person.