J. S20021/17

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA :  IN THE SUPERIOR COURT OF
              :      PENNSYLVANIA
       v.      :
              :
BRYAN BARNETT,      :    No. 482 EDA 2016
              :
      Appellant  :


Appeal from the Judgment of Sentence, January 29, 2016,
in the Court of Common Pleas of Philadelphia County
Criminal Division at No. CP-51-CR-0006166-2015


BEFORE:  BOWES, J., OTT, J. AND FORD ELLIOTT, P.J.E.


MEMORANDUM BY FORD ELLIOTT, P.J.E.:    **FILED APRIL 18, 2017**

Bryan Barnett appeals from the January 29, 2016 judgment of sentence entered in the Court of Common Pleas of Philadelphia County after his conviction in a waiver trial of aggravated assault, simple assault, and recklessly endangering another person.[1]  The trial court sentenced appellant to 6 to 12 years of imprisonment for the aggravated assault conviction and imposed no further penalty on the remaining convictions.  We affirm.

The trial court set forth the following factual history gleaned from the trial transcript:

> The complainant, Ibin McAffee (Mr. McAffee), testified at trial that on March 17, 2015, around 2:00 a.m., he encountered Appellant and another male near the corner of Locust and Juniper Streets, in the city and county of Philadelphia, Pennsylvania.

---

[1] 18 Pa.C.S.A. §§ 2702(a)(1), 2701(a)(1), and 2705, respectively.

Mr. McAffee was already acquainted with Appellant, who asked Mr. McAffee to get him drugs. When Mr. McAffee attempted to call his drug connection, Appellant's companion "got scared" and hastily walked away to hail a cab. Appellant followed him.

Later that morning, Mr. McAffee was walking with another male down 13th Street toward Spruce Street. In route to buy drugs from someone else, Mr. McAffee happened to pass by the building where Appellant resided. According to Mr. McAffee, Appellant came from behind and punched him multiple times in the face, knocked him to the ground, and "stomped" all over his body. Throughout the assault, Appellant "just kept saying [Mr. McAffee] fucked his money up" and to [sic] "[d]on't let that happen again."

After Appellant finished beating him, Mr. McAffee "got high" on crack cocaine and "slept for a day and a half."[Footnote 1] On March 19, 2015, after the drugs wore off, Mr. McAffee presented to the hospital and was diagnosed with multiple broken bones in his face that required reconstructive surgery. Mr. McAffee was discharged on March 22, 2015, and his physician's discharge report states that he suffered a "displaced fracture of the right zygoma, a fracture of the lateral and anterior wall of the maxillary sinus, a depressed fracture of the right orbital wall, and a right nasal bone fracture." Mr. McAffee was "admitted to plastic surgery so he could undergo open reduction and internal fixation of the fracture," which involved using bone from Mr. McAffee's skull to stabilize the fracture around his eye.

[Footnote 1] Mr. McAffee had also used crack cocaine to get high before the assault occurred.

On March 25, 2015, Mr. McAffee contacted the police and gave a statement to Detective James Callahan, in which he identified Appellant, by his first name, as the person who severely beat him. The

next day, March 26, 2015, Mr. McAffee identified Appellant in a photo array.[Footnote 2]

[Footnote 2] On direct examination, Mr. McAffee claimed he did not know Appellant "personally" and had briefly seen him only "a couple of times before." However, on cross-examination Mr. McAffee admitted he had prior sexual relations with Appellant and they would "drink a few beers together." Mr. McAffee also admitted that his trial testimony conflicted in several ways with his statement to Detective Callahan. For example, he told police that his encounter with Appellant was unrelated to drugs, but at trial he claimed that Appellant had approached him to obtain drugs and that Mr. McAffee was seeking to purchase drugs at the time of the assault.

Appellant as well testified at trial and gave a contrary version of events. Appellant claimed that on the evening of March 16, 2015, he frequented several bars with a male named Steve, whom Appellant had "just met." Appellant testified that he knew Mr. McAffee, who was a prostitute and "like a panhandler guy that's a drugee [sic]." Appellant testified that he and Mr. McAffee had "good relationships" in the past and had been sexually intimate on several occasions.

Appellant denied that he approached Mr. McAffee seeking drugs, and claimed rather that Mr. McAffee approached Appellant while he was walking around "getting acquainted" with Steve. Appellant testified that Mr. McAffee was "rude," "obnoxious," "interrupting," and "persisting to be a third wheel in our little get-together." Appellant testified that he and his companion walked away from Mr. McAffee and "hailed a cab" to go to another bar, but that Mr. McAffee followed them and sought to join them in the cab. When Appellant attempted

to close the cab door before Mr. McAffee could enter, Mr. McAffee "kept trying to slam it to jerk it to get [Appellant] to unloosen the door." Appellant "kept telling [Mr. McAffee] just leave us alone," and "[e]ven the guy Steve was trying to tell the cab driver to pull off[.]" Although the cab driver "finally" pulled away, Appellant's companion said "his night [was] ruined" and they decided to part ways.

Appellant testified that he exited the cab and walked to 13th and Spruce Streets, where he lived in the residence of another gentleman. Upon arriving at the apartment building's door, Appellant saw Mr. McAffee and another male about 45 feet away. Appellant attempted to enter the security code numbers in the door's keypad while Mr. McAffee continued walking closer. Appellant testified that he now was "on guard" because he knew Mr. McAffee's "history in that area" and "what he's capable of." Because Mr. McAffee was "walking towards [Appellant] real fast," Appellant backed away from the door and prepared to "defend himself." According to Appellant, he and Mr. McAffee then exchanged punches and Mr. McAffee fell during the encounter.

Trial court opinion, 7/15/16 at 1-4 (record citations omitted).

The record reflects that following sentencing, appellant did not file post-sentence motions. Appellant, however, filed a timely notice of appeal to this court. Appellant also timely complied with the trial court's order to file a statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b). Subsequently, the trial court filed its Rule 1925(a) opinion.

Appellant raises the following issues for our review:

   1.   Whether the evidence was insufficient as a
        matter of law to disprove self-defense beyond

a reasonable doubt where there was uncontroverted evidence that, after an initial altercation between [appellant] and the complaining witness, the complaining witness traveled to the residence wherein [appellant] was staying and thereupon confronted [appellant] as he was attempting to enter the location[?]

2. Whether a new trial must be ordered because the prosecutor violated **Doyle v. Ohio**, 426 U.S. 610 (1976) and its progeny by urging the [c]ourt to disbelieve [appellant's] testimony because [appellant] never informed police that he was acting in self-defense[?]

Appellant's brief at 5.

Our review of a sufficiency of the evidence challenge is well settled:

The standard we apply . . . is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Truong*, 36 A.3d 592, 597 (Pa.Super. 2012) (*en banc*) (quotation omitted), *appeal denied*, 57 A.3d 70 (Pa. 2012).

Where, as here, a defendant claims that self-defense justified his actions, he bears no burden to prove that claim. *See Commonwealth v. Smith*, 97 A.3d 782, 787 (Pa.Super. 2014). Rather, once any evidence comes before the fact-finder to support a self-defense claim, the Commonwealth bears the burden of disproving the claim beyond a reasonable doubt. *See id.*

The defense, found in Section 505 of the Crimes Code, provides, in relevant part:

> **(a)** **Use of force justifiable for protection of the person.--**The use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion.
>
> **(b)** **Limitations on justifying necessity for use of force.--**
>
> . . . .
>
> (2)   The use of deadly force is not justifiable under this section unless the actor believes that such force is necessary to protect himself against death, serious bodily injury, kidnapping or sexual intercourse compelled by force or threat; nor is it justifiable if:

> > (i) the actor, with the intent of causing death or serious bodily injury, provoked the use of force against himself in the same encounter; or
> >
> > (ii) the actor knows that he can avoid the necessity of using such force with complete safety by retreating, except the actor is not obliged to retreat from his dwelling or place of work, unless he was the initial aggressor or is assailed in his place of work by another person whose place of work the actor knows it to be.

18 Pa.C.S.A. § 505(a), (b)(2). Accordingly, the Commonwealth may disprove a claim of self-defense if it establishes: "1) the accused did not reasonably believe that he was in danger of death or serious bodily injury; or 2) the accused provoked or continued the use of force; or 3) the accused had a duty to retreat and the retreat was possible with complete safety." **Smith**, 97 A.3d at 787 (quotation omitted). Further, "the Commonwealth can negate a self-defense claim by proving the defendant 'used more force than reasonably necessary to protect against death or serious bodily injury.'" **Id.** at 788, quoting **Truong**, 36 A.3d at 599.

Here, appellant contends that "the testimony established that [appellant] was attacked by Mr. McAffee just outside of his residence in the

early morning hours of March 17, 2015" and that appellant was "forced to defend himself." (Appellant's brief at 14.) In its opinion, the trial court acknowledged that "there was conflicting testimony from the complainant and [a]ppellant," but as fact-finder, it found that:

> Mr. McAffee's testimony was materially more credible than Appellant's testimony. Mr. McAffee's hospital discharge report supports that Appellant unleashed a severe beating on him. Mr. McAffee suffered several fractured bones in his face, was hospitalized, and required reconstructive surgery. The severity of Mr. McAffee's injuries corroborated his testimony that Appellant had repeatedly punched and kicked him. In contrast to the severe injuries Mr. McAffee sustained, Appellant at most suffered mild swelling around his eye. Even if the altercation was not solely instigated by Appellant, Mr. McAffee's testimony and medical evidence support that Appellant "continued" to use force that was far beyond what was necessary to defend himself from severe bodily injury. By the same token, after knocking Mr. McAffee to the ground, Appellant could not possibly have believed that he remained in danger of death or serious bodily injury from Mr. McAffee, yet he continued to punch and stomp the unarmed man rather than retreat to his residence.

Trial court opinion, 7/15/16 at 7-8 (record citations and footnote setting forth supporting testimony omitted).

Our review of the trial transcript provides ample support for the trial court's conclusion that appellant did not reasonably believe that he was in danger of death or serious bodily injury, and that, despite his duty to retreat, appellant continued to use force when he had the ability to safely walk away. Therefore, the Commonwealth satisfied its burden of disproving

appellant's claim of self-defense beyond a reasonable doubt. Consequently, appellant's sufficiency challenge fails.

Appellant finally complains that he is entitled to a new trial because "[d]uring closing argument, the Commonwealth improperly urged the [trial court] to disbelieve [appellant's] testimony by pointing to his post-arrest silence[,]" as follows:

> THE COMMONWEALTH: [Appellant's] building is brand new. If he has that brand new building that surely it has security buttons, has a security camera, if all this happened the way [appellant] said it did, he tells police on April 2nd when he turns himself in this guy is lying on me, please go to the security camera, it will prove I was provoked, I was attacked. I couldn't get in my door. He didn't say a word until today. He didn't bring in any security camera that would corroborate his story. He didn't do anything like that.

Appellant's brief at 18; notes of testimony, 11/24/15 at 86-87.

In his argument on this issue, appellant relies on *Doyle v. Ohio*, 426 U.S. 610 (1976), and its progeny to argue that the above comment made by the Commonwealth in its closing entitles appellant to a new trial. In *Doyle*, the United States Supreme Court held that prosecutorial comment on a defendant's post-*Miranda*[2] silence may violate due process, and the prosecutor may not impeach a testifying defendant with his post-*Miranda* silence. *Id.* at 619. In *Fletcher v. Weir*, 455 U.S. 603 (1982), the High Court subsequently held that cross-examination of a testifying

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

defendant regarding post-arrest silence does not violate due process if the silence occurred prior to the issuance of **Miranda** warnings. **Id.** at 607. The Pennsylvania Supreme Court rejected **Fletcher** in **Commonwealth v. Turner**, 454 A.2d 537 (Pa. 1982), holding that under Art. I, § 8 of the Pennsylvania Constitution, **Doyle**'s protection extended to the entire post-arrest period, regardless of whether **Miranda** warnings were given prior to the defendant's statements. **Id.** at 540. "Both [the Pennsylvania Supreme] Court and the High Court, however, have determined that there is no violation of due process when pre-arrest, pre-**Miranda** silence is used at trial to impeach a testifying defendant." **Commonwealth v. Spotz**, 870 A.2d 822, 831 (Pa. 2005) (citation omitted).

Here, although appellant admits that "the prosecutor did not question [appellant] about his post-arrest silence," he contends that "the prosecutor urged the [trial c]ourt to discredit [appellant] because he exercised his right to remain silent[]" and that "this is equally offensive to the Fifth and Fourteenth Amendments (as well as Article I, Section 9)." (Appellant's brief at 20.) In support, appellant then cites to two cases where reversible error was found when a prosecutor, during closing in a jury trial, commented on a defendant's silence at the time of his arrest.[3]

---

[3] **Commonwealth v. Easely**, 396 A.2d 1198 (Pa. 1979), and **Commonwealth v. Stafford**, 299 A.2d 590 (Pa. 1973), respectively.

J. S20021/17

Here, appellant was tried in a bench trial. It is axiomatic that when a trial court sits as fact-finder, it is presumed to know the law, ignore prejudicial statements, and disregard inadmissible evidence. *Commonwealth v. Konias*, 136 A.3d 1014, 1022 (Pa.Super. 2016) (citation omitted); *see also Commonwealth v. Flynn*, 460 A.2d 816, 823 n.13 (Pa.Super. 1983) (stating that this court "presume[s] that the [trial] court, which sat as factfinder in this case, followed its own instructions[]"). In the trial court's words:

> This Court based its verdict on the evidence and testimony presented during trial, not on the prosecutor's closing arguments. This Court was aware that a defendant's post-arrest silence cannot be used to impeach his credibility, took note of defense counsel's objections, and was not prejudiced against Appellant by the prosecutor's comments that Appellant never informed the police of his version of the incident. Accordingly, even if the prosecutor's comments were improper, Appellant suffered no prejudice and his appeal on this ground should be denied.

Trial court opinion, 7/15/16 at 11 (footnote omitted). We agree, and nothing in the certified record before us demonstrates otherwise.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/18/2017

- 11 -