J-S23001-19

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| GARY L. GUYAUX, | |
| Appellant | No. 1521 WDA 2017 |

Appeal from the Judgment of Sentence Entered September 7, 2017
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0008870-2016

BEFORE:  BENDER, P.J.E., NICHOLS, J., and COLINS, J.*

MEMORANDUM BY BENDER, P.J.E.:                FILED JUNE 18, 2019

Appellant, Gary L. Guyaux, appeals from the judgment of sentence of 18-36 months' incarceration, imposed after a jury convicted him of terroristic threats, 18 Pa.C.S. § 2706(a)(1).  In this appeal, Appellant challenges the sufficiency of the evidence supporting his conviction, the trial court's refusal to issue a requested instruction, and the discretionary aspects of his sentence.  After careful review, we affirm.

In April of 2016, Appellant, a then federally licensed firearms dealer, and owner of 38 dogs, was under investigation by Robert Fredley of Animal Friends for animal abuse violations.  N.T., 6/6/17, at 48-49.  On April 14,

_____

* Retired Senior Judge assigned to the Superior Court.

2016, Lieutenant Michael Hamm of the North Fayette Township police arrested Appellant during a traffic stop over a suspected firearm offense.[1]  Id. at 17, 29.  While incarcerated in the Allegheny County Jail as a result of that arrest, Appellant made two recorded phone calls to his sister, during which he made the following comments:

> "Okay Christie, I'm gonna tell you what.  Here's how to put it.  The stress has got to have an outlet some place, cause I want to kill those God damn people.  I want them all dead."  (Transcript of jail calls made by [Appellant on] 4/18/2016)
>
> "I don't care, I'm going to kill every fucking one of them."  (Transcript of jail calls made by [Appellant on] 4/20/16)

Trial Court Opinion ("TCO"), 10/22/18, at 4.

At trial, Appellant testified that he made these comments out of his frustration with the fact that his dogs had been seized following his arrest, and that one of the dog's legs had been amputated.  N.T., 6/6/17, at 61-62.  He claimed that, contrary to a literal interpretation of his comments, that he only intended to "sue the daylights out of" the targets of his ire, Lt. Hamm and Mr. Fredley.  Id. at 62.

The Commonwealth charged Appellant with three counts of terroristic threats based on the content of his calls to his sister.  The jury acquitted him on two counts, but found him guilty of the remaining offense.  On September 7, 2017, the trial court sentenced Appellant to 18-36 months' incarceration.  Appellant filed a timely post-sentence motion seeking reconsideration of his

_____

[1] A jury subsequently acquitted Appellant of that offense.  See id. at 32-33.

sentence, which the court denied on September 19, 2017. Appellant filed a timely notice of appeal, and a timely, court-ordered Pa.R.A.P. 1925(b) statement. The trial court issued its Rule 1925(a) opinion on October 23, 2019.

Appellant now presents the following questions for our review:

I. Was the evidence insufficient to sustain the verdict of terroristic threats when the Commonwealth failed to prove beyond a reasonable doubt that [Appellant] had the requisite intent when the threat was only heard by his sister and was never meant to be repeated to anyone?

II. Was the evidence insufficient to sustain the verdict of terroristic threats when the statements were made in … spur-of-the-moment transitory anger?

III. Did the trial court err in failing to give a jury instruction on "transitory anger"?

IV. Was the sentence imposed manifestly excessive, unreasonable, and an abuse of discretion when [it] was not consistent with the norms underlying the sentencing code, failed to consider all relevant factors including the nature and characteristics of [Appellant], especially his rehabilitative needs and took into consideration improper factors?

Appellant's Brief at 9 (unnecessary capitalization omitted).

Appellant's first two claims concern the sufficiency of the evidence supporting his conviction for terroristic threats. We review such claims under the following standard:

A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to

human experience and the laws of nature, then the evidence is insufficient as a matter of law. When reviewing a sufficiency claim[,] the court is required to view the evidence in the light most favorable to the verdict winner[,] giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

Commonwealth v. Widmer, 744 A.2d 745, 751 (Pa. 2000) (internal citations omitted).

Appellant was convicted under the following provision of the terroristic threats statute:

(a) Offense defined.--A person commits the crime of terroristic threats if the person communicates, either directly or indirectly, a threat to:

(1) commit any crime of violence with intent to terrorize another;

18 Pa.C.S. § 2706(a)(1).

## I.

In Appellant's first claim, he asserts that the Commonwealth failed to prove his intent to terrorize another because he made the at-issue statements while speaking to his sister and ostensibly did not intend for her to communicate the threat to the victims. Appellant also argues that there is insufficient evidence to establish that the threat was communicated to Officer Fredley.[2] We disagree on both fronts.

_____

[2] Appellant failed to raise this claim separately in either the "statement of the questions involved" or "argument" sections of his brief. Nevertheless, because Appellant raised this claim in his Rule 1925(b) statement (see Rule 1925(b) statement, 11/27/17, at ¶ 11(a)), and because his failure to adhere to the Rules of Appellate Procedure does not impede our review, we decline to find waiver.

> Terroristic threats do not have to be communicated directly. See Commonwealth v. Kelley, … 664 A.2d 123, 127 ([Pa. Super.] 1995) (holding a threat was communicated when the appellant gave a secretary a message to threaten violence to certain intended recipients). Further, a defendant does not need to intend to carry out the consequence of the threat to communicate a threat. See Commonwealth v. Cancilla, … 649 A.2d 991, 994 ([Pa. Super.] 1994) (holding a threat was communicated by a phone call that stated a bomb was in a building, although there was no bomb).

Commonwealth v. Beasley, 138 A.3d 39, 47 (Pa. Super. 2016).

Here, although Appellant was communicating with his sister and not directly with the targets of his threat, he was speaking over the phone while he knew that the call was being recorded by prison authorities.[3] In such circumstances, a reasonable person would conclude that it was virtually inevitable that the threat would be indirectly communicated to the victims by authorities to apprise them of a possible risk to their safety. The mere possibility that the threat would not be transmitted does not negate Appellant's intent to terrorize. Moreover, the evidence was sufficient to prove that the victim, Humane Officer Fredley, ultimately heard the threat, as demonstrated from the following portion of his testimony:

> Q. Were you ever contacted by Lieutenant Hamm from the North Fayette Police Department?
>
> A. Yes, I was.
>
> Q. And what was the nature of that contact?

_____

[3] Testimony established that 1) each phone call made from the prison includes a message indicating that the call is being recorded, see N.T., 6/6/17, at 20; and 2) Appellant's sister warned him that the call was being recorded, see Appellant's Appendix D (transcript of phone call dated 4/20/16).

- 5 -

A. That involved the investigation that I was doing with the defendant's dogs, but at that point Lieutenant Hamm advised me there were some threats made and I was on the receiving side of those threats.

Q. Was Lieutenant Hamm specific with you about the contents of those threats?

A. Yes.

N.T., 6/6/17, at 49. Accordingly, we conclude that there was sufficient evidence to establish that Appellant intended to terrorize Humane Officer Fredley, and that the threat was communicated to him.

II.

Next, Appellant contends that the evidence was insufficient to prove the elements of terroristic threats because he asserts that the threat was made in spur-of-the-moment anger. Indeed,

> The provisions of 18 Pa.C.S. § 2706 are derived from the Model Penal Code. The Joint State Government Commission, in its Comment to this section of the Pennsylvania Crimes Code, has said that the purpose of the criminal provision is to impose criminal liability on persons who make threats which seriously impair personal security…. It is not intended by this section to penalize mere spur-of-the-moment threats which result from anger. The statutory proscription is directed against those who employ threats in circumstances more serious than would be covered by petty offenses like disorderly conduct or breach of the peace. In reviewing a statement alleged to be a terroristic threat, we do not look at the statement in a vacuum. Instead, we must look at it in light of the surrounding circumstances.

Commonwealth v. Anneski, 525 A.2d 373, 376 (Pa. Super. 1987) (cleaned up).

Here, however, the attendant circumstances adequately demonstrated that Appellant did not make his threat in the spur of the moment. Appellant

had been in prison for several days when he first made a threat, and for nearly a week when he made the second threat. This was not a situation where Appellant issued a threat contemporaneous to an intense argument. Moreover, with regard to Appellant's assertion that he was merely reacting to the news that one of his dog's legs had been amputated, the trial court noted that Appellant "expressed a desire to 'kill those God damn people' on 4/18/16, 2 days prior to learning about his dog's leg, [and] again stat[ed] on 4/20/16, '... I'm going to kill every fucking one of them.'" TCO at 4. Therefore, we agree with the trial court when it stated, "[t]here doesn't appear to be anything 'transitory' about [Appellant]'s anger...." Id. at 5. Accordingly, we conclude that Appellant's second claim also lacks merit.

### III.

Next, Appellant argues that the trial court erred when it refused to give a jury instruction on transitory anger.

> In reviewing the propriety of the trial court's refusal to give a defendant's requested points for charge to the jury, a reviewing court looks to whether the points for charge accurately set forth the relevant legal principles, whether evidence was introduced at trial from which the jury could apply those principles to the facts, and whether the court's instructions to the jury otherwise adequately covered the requested points for charge.

Commonwealth v. Boden, 507 A.2d 813, 819 (Pa. 1986).

We ascertain no error in the trial court's refusal to issue a jury instruction on transitory anger. As noted above, the evidence simply could not support the defense that Appellant's threats were issued in the spur of the moment. Appellant issued nearly identical threats on two occasions several

- 7 -

days apart, and those threats were not made during, or even reasonably close in time to, a heated argument with the victim.

IV.

Finally, Appellant challenges the discretionary aspects of his sentence. He argues that his 18-36 month sentence, which exceeded the aggravated range suggested by the sentencing guidelines for his offense, was manifestly excessive and contrary to the norms of the sentencing code. He also claims the court failed to consider relevant statutory factors, and relied on impermissible factors.

> Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right. Commonwealth v. Sierra, 752 A.2d 910, 912 (Pa. Super. 2000). An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:
>
> > [W]e conduct a four-part analysis to determine: (1) whether [the] appellant has filed a timely notice of appeal, see Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, see Pa.R.Crim.P. [720]; (3) whether [the] appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.[] § 9781(b).
>
> Commonwealth v. Evans, 901 A.2d 528, 533 (Pa. Super. 2006), appeal denied, 589 Pa. 727, 909 A.2d 303 (2006) (internal citations omitted). Objections to the discretionary aspects of a sentence are generally waived if they are not raised at the sentencing hearing or in a motion to modify the sentence imposed. Commonwealth v. Mann, 820 A.2d 788, 794 (Pa. Super. 2003), appeal denied, 574 Pa. 759, 831 A.2d 599 (2003).
>
> The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. Commonwealth v. Paul, 925 A.2d 825, 828 (Pa. Super. 2007). A substantial

question exists "only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." Sierra, supra at 912-13.

As to what constitutes a substantial question, this Court does not accept bald assertions of sentencing errors. Commonwealth v. Malovich, 903 A.2d 1247, 1252 (Pa. Super. 2006). An appellant must articulate the reasons the sentencing court's actions violated the sentencing code. Id.

Commonwealth v. Moury, 992 A.2d 162, 170 (Pa. Super. 2010).

Instantly, the Commonwealth concedes that Appellant filed a timely notice of appeal, and preserved his claim in a post-sentence motion. See Commonwealth's Brief at 20 ("Appellant has preserved this issue."). Appellant also included a statement pursuant to Rule 2119(f) in his brief. Moreover, Appellant presents multiple substantial questions for our review. See Commonwealth v. Stewart, 867 A.2d 589, 592 (Pa. Super. 2005) (holding that a claim that "the sentencing court considered improper factors" presents a substantial question); see also Commonwealth v. Raven, 97 A.3d 1244, 1253 (Pa. Super. 2014) (stating "this Court has held that an excessive sentence claim—in conjunction with an assertion that the court failed to consider mitigating factors—raises a substantial question" and that a substantial question is also raised where the appellant "sufficiently articulates the manner in which the sentence violates either a specific provision of the sentencing scheme set forth in the Sentencing Code or a particular fundamental norm underlying the sentencing process") (cleaned up). Accordingly, we may consider the merits of Appellant's sentencing claim.

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

Commonwealth v. Hoch, 936 A.2d 515, 517–18 (Pa. Super. 2007) (citation omitted). Moreover, a

> sentencing judge has broad discretion in determining a reasonable penalty, and appellate courts afford the sentencing court great deference, as it is the sentencing court that is in the best position to "view the defendant's character, displays of remorse, defiance, or indifference, and the overall effect and nature of the crime."

Commonwealth v. Edwards, 194 A.3d 625, 637 (Pa. Super. 2018) (quoting Commonwealth v. Walls, 926 A.2d 957, 961 (Pa. 2007)).

At the time of sentencing, Appellant had a prior record score of zero, and the offense gravity score for his crime was three. Accordingly, the sentencing guidelines called for a standard-range sentence of "RS-1," i.e., restorative sanctions to a minimum term of incarceration of one month. See Basic Sentencing Matrix, 204 Pa. Code § 303.16(a); N.T., 9/7/17, at 22. The aggravated-sentencing range for such an offense would include confinement for up to a minimum of 4 months' incarceration. Id. The trial court sentenced Appellant to 18-36 months' incarceration; thus, Appellant's sentence fell outside the guidelines. Nevertheless, as Appellant was sentenced well-below the statutory maximum for the offense—five years' incarceration—his sentence is not illegal. See 18 Pa.C.S. § 1104(1).

"As the sentencing guidelines are merely advisory, if the court finds it appropriate to sentence outside the guidelines, … it may do so as long as it places its reasons for the deviation on the record." Commonwealth v. Johnson, 666 A.2d 690, 693 (Pa. Super. 1995) (cleaned up). However, we must vacate a sentence that falls outside the guidelines when it is unreasonable. 42 Pa.C.S. § 9781(c)(3). Thus, we must review the trial court's stated reasons for sentencing Appellant outside the guidelines and determine whether the departure was reasonable.

The trial court provided the following justification for the sentence imposed:

> I've considered the nature of the offense. I've considered the victim impact statement by [Humane] Officer Fredley. I've considered the contents of the presentence report. I've considered all other factors that I may take into account, and the arguments of defense counsel. I've considered the contents of the presentence report, the sentencing guidelines applicable to this case, and for all those reasons, [Appellant], having been convicted at Count 1, after a jury trial on June 5th, 2017 -- I'm sorry, June 7th, 2017, [Appellant] is sentenced to not less than 18, nor more than 36 months at the State Correctional Facility to be determined by the Department of Corrections.
>
> [Appellant] stands committed and I exceeded the standard and aggravated range of sentence in the sentencing guidelines, given the nature of the offense, the number of firearms that have been involved in this case, the underlying failure of your client to cooperate with resolving many of the underlying issues which brought him here in the first place, and the underlying failure to preclude a dangerous situation, and the many, many bond hearings that we had in this case.
>
> There was a reason that he would not and did not wish to have his residence searched, and I would imagine or suspect it was the 583 firearms that were there, many [of] which were automatic weapons that were finally secured by the deputies in that place.

Also the nature of the offense. You don't just go to the county jail and pick up a phone and they tell you in advance[,] "This telephone call is being tape recorded and it is monitored," and then threaten to kill the officers that are doing their job. They got up that day, put on their uniform and badge and tried to clean up this mess that apparently you have had for year, after year, after year, and all they got was a threat that[,] "When I get a chance I'm going to kill them." No one deserves to do their job that way.

And you definitely have the means. You definitely had the attitude to do that. Those are my findings.

N.T., 9/7/17, at 23-25.

Appellant now argues that the trial court "inappropriately took into consideration his untried criminal case, his assertion of his constitutional right to refuse to consent to a search of his home, his lack of cooperation, and for seeking bond reductions." Appellant's Brief at 39. However, Appellant fails to develop any of these arguments in any meaningful fashion, beyond the bald assertion that these factors were impermissible. Instead, Appellant engages in an extensive discussion of Commonwealth v. Coulverson, 34 A.3d 135 (Pa. Super. 2011).

In that case, the defendant was sentenced to 18-90 years' incarceration for rape, robbery, and related offenses. Id. at 138-39. On appeal, he "concede[d] the appropriateness of the lower range of the sentence but contest[ed] the imposition of multiple statutory maximums which, even given his youthful age of nineteen, [effectively] constitute[d] a life sentence [or] life on parole." Id. at 139. We held that Coulverson's sentence was "'clearly unreasonable' within the meaning of 42 Pa.C.S. § 9781(c)." Id.; see also 42 Pa.C.S. § 9781(c)(3) (requiring an appellate court to vacate a sentence where

"the sentencing court sentenced within the sentencing guidelines but the case involves circumstances where the application of the guidelines would be clearly unreasonable").

The instant matter entails a sentence outside the guidelines, one that does not involve the obvious manipulation of the guidelines that occurred in Coulverson with respect to the minimum and maximum sentences imposed in that case, and concerns a much-older defendant in disanalogous circumstances. Accordingly, we find Coulverson to be inapposite to the issues raised by Appellant in this appeal.

To the extent that Appellant relies on Coulverson for the somewhat boilerplate proposition contained therein that, despite the impact of a crime on the victims, "those losses do not obviate the legal and social imperative that a defendant's punishment must fit not only the crime he committed, ... but also must account for the rehabilitative need of the defendant, and the companion interest of society reflected in sections 9721(b) and 9781(d)[,]" id. at 148, we turn to consider whether the trial court's reasons for sentencing Appellant outside the guidelines was reasonable in light of the statutory factors the court was obliged to consider.

Appellant argues that the trial court failed to consider his rehabilitative needs. First, the trial court indicated that it considered the pre-sentence report in designing Appellant's sentence. N.T., 9/7/17, at 24. "When a sentencing court has reviewed a presentence investigation report, we presume that the court properly considered and weighed all relevant factors

- 13 -

in fashioning the defendant's sentence." Commonwealth v. Baker, 72 A.3d 652, 663 (Pa. Super. 2013) (hereinafter, "the Baker presumption"). The certified record does not contain a copy of that report, which may or may not have addressed Appellant's rehabilitative needs. In any event, Appellant has failed to argue that the report did not address, or did not adequately address, those needs. Indeed, he fails to address the contents of the pre-sentence report at all. Instead, Appellant relies solely on the fact that the trial court did not specifically state its consideration of Appellant's rehabilitative needs in the statement it offered contemporaneous to issuing the sentence. This does not convince us that Appellant's sentence was unreasonable, especially given the Baker presumption and, relatedly, Appellant's failure to object to or otherwise contest the contents of the pre-sentence report.

Appellant also argues that the trial court focused exclusively on the impact of the offense on the victim at the expense of other relevant statutory factors. See 42 Pa.C.S. § 9721(b) ("[T]he court shall follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant."). We disagree. Again, the Baker presumption applies, and Appellant has failed to address any deficiencies that may have existed in the pre-sentence report. Additionally, the mere fact that the trial court spoke more at length about the impact on the victim than other factors does not render the sentence imposed unreasonable, as the trial court

is well within its discretion to weigh each statutory factor as it sees fit. While each statutory factor must be considered to some degree, it is not the case that each such factor must be weighed equally.

Thus, we conclude that the trial court adequately considered each statutory factor. Nevertheless, we must considered whether the sentence imposed was unreasonable, despite consideration of those factors. As noted by Appellant, after consideration of these factors, the trial court imposed a minimum sentence that was more than four times the maximum sentence that would still fall within the aggravated range of the sentencing guidelines.

Although harsh on its face, we must still afford the trial court a great degree of deference in its sentencing decisions. Edwards, supra. Here, Appellant received a sentence of 18-36 months' incarceration; although it represents a significant departure from the guideline recommendations, it was still 1-2 years of incarceration short of the statutory maximum. The trial court expressed great concern for the brazenness of Appellant's threat (in that he knew he was being recorded), his capacity to carry out the threat, his lack of remorse,[4] and his history of conflicts with local governments and law enforcement (suggesting at least some evidence that lesser sanctions would be ineffective in rehabilitating him). Although this Court may have sentenced

_____

[4] For example, Appellant testified during direct-examination, and relatively unprompted, as follows: "You know, if they would have got hit by a train, that would have made me happy, but I wasn't going to go kill them." N.T., 6/6/17, 62-63. This statement occurred more than a year after the threat that gave rise to his conviction, and was uttered in open court, leaving little doubt that Appellant did not regret the harm that he caused.

Appellant to a shorter term of incarceration, such speculation is irrelevant to our standard of review. It would disregard the deference we must afford to the trial court, which unlike this Court was not reviewing a cold record. The question before us is whether Appellant's sentence was unreasonable in light of the particular circumstances of this case, and we cannot conclude with any degree of certainty that it was, in fact, unreasonable, even if we might reach a different decision in the first instance. Accordingly, Appellant is not entitled to relief on his discretionary aspects of sentencing claim.

Judgment of sentence affirmed.

Judge Nichols joins this memorandum.

Judge Colins notes his dissent.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/18/2019