633 A.2d 1081

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Thomas MEADOWS, Appellant.**

Supreme Court of Pennsylvania.

Argued Oct. 21, 1992.

Decided Nov. 3, 1993.

452

Norris E. Gelman, Philadelphia, for appellant.

Mary M. Killinger, Chief, Appeals Div., Robert A. Graci, Chief Deputy Atty. Gen., for appellee.

Before NIX, C.J., and FLAHERTY, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION

ZAPPALA, Justice.

Appellant Thomas Meadows was convicted of murder of the first degree, attempted murder, two counts of aggravated assault, two counts of theft, five counts of robbery, burglary, and possession of an instrument of crime on July 20, 1990, following a jury trial. The jury returned a sentence of death based upon its finding that the two aggravating circumstances established by the Commonwealth, that is, the defendant committed a killing while in the perpetration of a felony, 42 Pa.C.S.A. § 9711(d)(6), and the defendant knowingly created a grave risk of death to another person in addition to the victim of the offense in the commission of the offense, 42 Pa.C.S.A. § 9711(d), outweighed the mitigating circumstance that the defendant had no convictions since 1971. Post-trial motions

were denied. On March 11, 1991, the Appellant was sentenced to death and consecutive sentences were imposed for the remaining convictions. We affirm.

## I. SUFFICIENCY OF THE EVIDENCE

The Appellant does not challenge the sufficiency of the evidence; however, we have independently reviewed the record to determine the sufficiency of the evidence supporting the Appellant's conviction consistent with our obligation in cases in which the penalty of death has been imposed. *Commonwealth v. Zettlemoyer*, 500 Pa. 16, 454 A.2d 937 (1982), *cert. denied*, 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983), *reh. den.*, 463 U.S. 1236, 104 S.Ct. 31, 77 L.Ed.2d 1452 (1983). The test for determining the sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the Commonwealth as verdict winner and drawing all proper inferences favorable to the Commonwealth, the trier of fact could reasonably have determined all elements of the crime to have been established beyond a reasonable doubt. *Commonwealth v. Syre*, 507 Pa. 299, 489 A.2d 1340 (1985).

The evidence introduced at trial was sufficient to establish the elements of the crime beyond a reasonable doubt. The Commonwealth presented the testimony of Amber Cintron, an eyewitness to the events leading to the death of her paramour, James Hayes. While married, Mr. Hayes shared an apartment with Ms. Cintron and her two children. On the evening of March 30, 1984, Mr. Hayes accompanied the three of them to dinner and a musical. They returned to the apartment after 11:30 p.m. in separate vehicles. After walking to the door of the apartment together, the children entered the apartment first, followed by Ms. Cintron and Mr. Hayes. They were startled by a man carrying a gun who followed right behind them. The man was not wearing a mask, and Ms. Cintron recognized him as someone she had known before.

The man asked Mr. Hayes, "Where is the money?" Mr. Hayes replied that he did not have any money. Ms. Cintron heard Mr. Hayes call the man by the name of "Jake." While

the man pointed the gun at him, Mr. Hayes took a trash bag containing marijuana from a closet and gave it to him, saying that it was worth $15,000. The man searched through Ms. Cintron's pocketbook and took her keys after emptying the contents on the table.

The man then searched Mr. Hayes and removed his wallet and car keys. He put the wallet on the table. After chiding Mr. Hayes for cheating on his wife, he told Mr. Hayes to get down on the floor. Mr. Hayes lay face down on the floor, and the man tied his hands behind his back with a telephone cord. The man fired a shot into his back at close range. Ms. Cintron started screaming and the man aimed his gun at her. She begged him not to shoot her because she had known him since she was a young girl. Unmoved, he shot her twice in the leg area. He then left with the car keys, but without the trash bag of marijuana.

Officer Lawrence Santee, a Cheltenham Township police officer, responded to the report of a shooting and arrived at the scene. When he entered the apartment, he saw Ms. Cintron sitting in front of a love seat and her two children, who were not injured, sitting across the room on a sofa. In the middle of the room, he saw the body of Mr. Hayes laying face down with his hands tangled up in telephone wire. He also observed a large trash bag in the room.

An autopsy performed on Mr. Hayes established that the cause of death was a gunshot wound of the trunk. Ms. Cintron survived the shooting and was hospitalized. During her hospital stay, she spoke with detectives and identified the shooter as a man from her neighborhood whom she had known since she was a girl. She described him as a black male in his thirties whom Mr. Hayes had referred to as "Jake." The police learned later that the Appellant had a half-brother whose name is Jacob Adams.

Ms. Cintron was unable to recall the man's name, but told the police that she would be able to identify him from a photograph. She told the police that when she was younger, the man had rented a room in a house located near a candy

store in her neighborhood. She had seen him several times since then, including one occasion when he had given her a ride in his yellow Mercedes automobile.

During the first week of her hospitalization, Ms. Cintron was shown a photographic array of black males. The Appellant's photograph was not in the array and she did not identify any of the men as the shooter. She was also shown a photograph of Jacob Adams, the Appellant's half-brother. She could not remember ever having seen him before.

The police soon learned the name of Thomas Meadows from a woman who had rented a room to him in the house described by Ms. Cintron. The woman had identified the names of several former tenants, one of whom was the Appellant. With that information, the police were able to include the Appellant's photograph in a separate array of suspects. When Ms. Cintron examined the photographs, she immediately identified the Appellant as the shooter. She was visibly shaken by this experience and began screaming. A nurse insisted that the police officer leave her room.

Police officers returned to the hospital room later to take Ms. Cintron's statement. Ms. Cintron reexamined the photographs and again identified the Appellant. She was able to tell the officers that his name was "Tom."

An arrest warrant was issued for the Appellant, but the police were unable to locate him at his last known address. A woman, who identified herself as the Appellant's wife, was living at the residence. The police conducted regular surveillance of the house and contacted various government agencies to broaden their search efforts. Six years passed before the police were able to apprehend the Appellant. He was arrested in Philadelphia on March 2, 1990.

## II. ALLEGATIONS OF TRIAL ERROR

The Appellant raises four allegations of trial error, the first of which is that reversible error was committed when the prosecutor commented on the anticipated defense to the charges during his opening statement. The Appellant con-

tends that the following remarks of the prosecutor were improper:

Ladies and gentlemen, the evidence in this case will be compelling. It will be convincing. It will be overwhelming. I have the burden of proof. I welcome that burden of proof, particularly in this case.

The defendant does not have to present any evidence, but, I will tell you now, if he does—and, remember, he has a constitutional right not to—but, if he does, we will expose whatever defense they attempt to put on, if they do, and we will expose it for what it will really be.

(N.T., July 16, 1990, pp. 28–29)

At the end of the prosecutor's opening statement, defense counsel requested a conference with the trial judge. The trial judge called a short recess and held a conference in chambers with counsel. Defense counsel objected to the prosecutor's reference. The following discussion ensued:

[PROSECUTOR]: Do you want a response? I would emphasize to the Court that I, in fact, emphasized, at least twice, that the defendant has absolutely no obligation to present any evidence whatsoever, as I know the Court has already emphasized in both voir dire and, as it will later emphasize throughout the case, and I would suggest that this was just—that was proper opening.

If you want to give them another—

THE COURT: The only thing I am concerned about is: did you leave them with the impression, now, that the only reason the defendant won't testify is because you have scared him?

[PROSECUTOR]: No.

[DEFENSE COUNSEL]: That's the inference, Your Honor.

THE COURT: That is the inference. . . .

[DEFENSE COUNSEL]: That's right.

THE COURT: Let's discuss whether or not—what kind of curative instruction to give. What would you think would be fair?

[DEFENSE COUNSEL]: Well—

THE COURT: I will be more than happy to give it.

[DEFENSE COUNSEL]: Your Honor, let me just say this for the record. That kind of statement—and, assuming that that kind of inference could be drawn—in my opinion, is not a harmless error, and, notwithstanding any instruction, I would still maintain my objection on the record.

 \* \* \* \* \* \*

[PROSECUTOR]: Sure. I will just say, Your Honor, that, if there was anything improper about it—and I certainly do not think that there was—but, if there was, it is certainly something that could be taken care of with a curative instruction, or, if you just want to leave it alone, I don't know. It's certainly not, you know, something that, in and of itself, is going to deny the defendant a fair trial, which is the standard, that it's so extreme, which I don't think so.

THE COURT: Is the defendant requesting an instruction at this point? Do you think it would exacerbate this, or do you think it might ameliorate it, notwithstanding that you feel it's not a harmless error? Is there anything, at this point, to ameliorate what you consider to be error, or to soften it?

[DEFENSE COUNSEL]: Not really, Your Honor.

THE COURT: All right. Then that's it.

[DEFENSE COUNSEL]: The proper motion for me would be a motion for mistrial.

THE COURT: Are you doing that?

[DEFENSE COUNSEL]: Yes.

THE COURT: I'm denying it, at this point. All right.

(N.T., July 16, 1990, pp. 30–33).

No cautionary instruction was given to the jury. The Appellant contends that the prosecutor's statement adversely reflected on his right to refuse to testify and encouraged the jury to speculate about the limited nature of his defense. The Appellant argues that the prosecutor's statement created the impression that the Commonwealth had evidence to defeat any

attempt to establish a defense. The Appellant claims the prosecutor's comments were improperly designed to bolster the Commonwealth's case by suggesting that its case was too strong to answer, and if answered, exposure would follow.

The Appellant did not testify. Defense counsel rigorously cross-examined the prosecution witnesses and challenged the identification testimony of the Commonwealth's single eyewitness. Sylvia Hayes, the widow of James Hayes, was the sole witness who testified for the defense. Ms. Cintron had testified that Mrs. Hayes threatened her with death after a confrontation about the affair with Mr. Hayes. Mrs. Hayes testified that she had confronted and threatened Ms. Cintron, but denied that she had threatened to hurt her. Mrs. Hayes also testified that she did not know the Appellant and had not hired him to kill her husband.

The Appellant's assertion of trial error is founded on two separate premises: first, that the prosecutor's statement was an improper comment on his right to remain silent, and second, that the effect of the statement was to prejudice the jury. The Appellant argues that nothing flaws a trial more than adverse comment on the defendant's failure to testify or to put on a defense. The Appellant cites this Court's decision in *Commonwealth v. Turner*, 499 Pa. 579, 454 A.2d 537 (1982) in support of his claim that a new trial is warranted.

In *Commonwealth v. Turner*, this Court held that a prosecutor's reference to the defendant's silence before trial during cross-examination of the defendant was reversible error warranting the grant of a new trial. Conflicting evidence of the circumstances leading to the shooting death of the victim was introduced at trial. The defendant had testified in his own behalf that the shooting was in self-defense. After the defendant stated on cross-examination that he saw a third person shooting at him, the prosecution questioned him whether he had ever told the police that someone was shooting at him. The defendant had never given a statement to the police. Defense counsel objected to the question and moved for a mistrial. The trial judge denied the motion for mistrial, but

sustained the objection and sua sponte gave cautionary instructions to the jury.

We noted in *Turner* that there is a strong disposition on the part of lay jurors to view the exercise of the right to remain silent as an admission of guilt. We stated that,

The prejudice to the defendant resulting from reference to his silence is substantial. While it is efficacious for the Commonwealth to attempt to uncover a fabricated version of events, in light of the "insolubly ambiguous" nature of silence on the part of the accused, ... we do not think it sufficiently probative of an inconsistency with his in-court testimony to warrant allowance of any reference at trial to the silence. Accordingly, the Commonwealth must seek to impeach a defendant's relation of events by reference only to inconsistencies as they factually exist, not to the purported inconsistency between silence at arrest and testimony at trial. Silence at the time of arrest may become a factual inconsistency in the face of an assertion by the accused while testifying at trial that he related this version to the police at the time of arrest when in fact he remained silent. * * * Absent such an assertion, the reference by the prosecutor to previous silence is impermissible and reversible error.

499 Pa. at 583, 454 A.2d at 539–40. (Citations omitted.) We held that the prejudicial effect of the reference to the post-arrest silence of the defendant on the jury's deliberations necessitated the grant of a new trial.

In *Commonwealth v. Clark*, 533 Pa. 579, 626 A.2d 154 (1993), this Court again emphasized that the post-arrest silence of an accused is not to be used to his detriment in criminal proceedings. The defendant was granted a new trial on the grounds that trial counsel was ineffective for failing to object to the prosecutor's reference to his post-arrest silence. The prosecutor had asked the defendant whether he had ever thought of telling the police what had happened during a shooting incident. After the defendant had answered the question in the negative, the prosecutor attempted to withdraw the question.

The prosecutor's question was similar to that posed by the prosecution in *Turner*. Applying our analysis in *Turner*, we held that the prosecutor's question was an impermissible reference to the defendant's post-arrest silence. We concluded that the jury could have interpreted the prosecutor's question to encompass the defendant's post-arrest silence because the question was ambiguous as to the specific time frame that was covered.

"[A]n impermissible reference to the accused's post-arrest silence is innately prejudicial." *Commonwealth v. Clark*, 533 Pa. at 587, 626 A.2d at 158. We must examine the prosecutor's remarks to determine initially whether there is any reference to the Appellant's post-arrest silence in this case. We conclude that the prosecutor's opening remarks were intended only to suggest to the jury that the evidence of the Commonwealth would satisfy its burden of proof. The prosecutor's references to the defense were not comments on the Appellant's silence, but were anticipatory remarks that the evidence would support the charges brought against the Appellant. The remarks exuded the confidence of a prosecutor who was able to produce an eyewitness to the events; however, preening is not innately prejudicial.

■ The Appellant also claims that the effect of the prosecutor's statement was to prejudice the jury. Comments by a prosecutor do not constitute reversible error unless the unavoidable effect would be to prejudice the jury, forming in their minds a fixed bias and hostility toward the defendant, so that they could not weigh the evidence objectively and render a true verdict. *Commonwealth v. Smith*, 518 Pa. 15, 540 A.2d 246 (1988); *Commonwealth v. Beasley*, 504 Pa. 485, 475 A.2d 730 (1984). We conclude that the trial court did not err in refusing to grant a mistrial in this case because the prosecutor's remarks were not inherently prejudicial.

■ The three remaining allegations of error in the guilt phase of the trial relate to claims of ineffectiveness of trial counsel for their failure to object to the prosecutor's closing statement and to the trial judge's charge. The issue of trial

counsel's effectiveness may be raised in this direct appeal because the Appellant is represented by different counsel. *Commonwealth v. Holmes,* 482 Pa. 97, 105, fn. 3, 393 A.2d 397, 401, fn. 3 (1978). The Appellant claims that trial counsel was ineffective (1) for failing to object to the closing statement of the prosecutor; (2) for failing to object to the trial judge's charge describing his silence at trial as a "failure to testify"; and (3) for failing to object or for requesting the trial judge's charge that it had ruled "certain evidence was not admissible."

■ In order to prevail on a claim of ineffectiveness of counsel, the Appellant must demonstrate (1) that the underlying claim is of arguable merit; (2) the particular course chosen by counsel did not have some reasonable basis designed to effectuate his interests; and (3) that counsel's actions were prejudicial. *Commonwealth v. Durst,* 522 Pa. 2, 559 A.2d 504 (1989). None of the allegations of ineffectiveness raised by the Appellant has merit.

■ The Appellant asserts that trial counsel was ineffective for failing to object to the prosecutor's closing statement to the jury. During his closing statement, the prosecutor stated:

The goal now—the goal in this courtroom—is to see what is the truth. Now, I say to you, ladies and members of the jury, that on this side of the room (indicating), I submit to you, they do not want you to see the truth. I say to you that they have done everything they can—many things—to try and get you off focus, to try and muddy up the waters, to try and envelop this room with smoke, so that you will not be able to find the truth; so that you will be confused, and your head will be spinning every which way, and you will get focused on tangential issues, and lose focus of the main issue in this case, which is, who shot and killed James Hayes, and then shot and tried to kill Amber Cintron. That's what this thing boils down to.

(N.T., July 19, 1990, p. 619).

In *Commonwealth v. Johnson,* 516 Pa. 527, 533 A.2d 994 (1987), we summarized the guiding principles in determining the impact of a prosecutor's closing argument:

A prosecutor, of course, must have reasonable latitude in presenting his case and must be free as well to make his arguments with "logical force and vigor." In addition, we have ruled consistently that not every intemperate or improper remark by the prosecution requires a new trial.

On the other hand, we have decided with equal clarity that there are lines of permissible conduct which cannot be crossed in the interests of basic fairness and justice. Because a jury tends to attach special importance to the Commonwealth's arguments, we are compelled to guard against utterances which unduly inflame and prejudice those members.

In broad terms, we have drawn the first and brightest line at the point where the language and inferences of the summation no longer relate back to the evidence on the record. In effect, the prosecutor is bound by our law to argue only those inferences which derive reasonably from the evidence of the trial. The prosecution cannot base its summation on a personal belief that the defendant is guilty. Such assertions of personal opinion are blatantly improper because they invade the province of the jury which alone bears the duty of determining criminal culpability. Expressions of personal belief, therefore, are improper comment as attempts to distract the jury from its appointed task of rendering a verdict based on the evidence.

516 Pa. at 530–31, 533 A.2d at 996. (Citations omitted).

The prosecutor's comments in this case were not an assertion of personal opinion as to culpability of the Appellant. The prosecutor urged the jury to focus on the evidence relating to the shooting incident itself, rather than attempt to divert the jury from its duty to decide the case on the evidence. We agree with the trial judge's observation that the comments did not preclude the jury's objective deliberation, although the prosecutor may have said more than was necessary to respond to the defense claim that the Commonwealth's case was founded on inadequate police investigation and the testimony of untrustworthy witnesses.

■ The Appellant next asserts that trial counsel was ineffective for failing to object to the trial judge's charge on his silence during the trial:

Defendant's failure to testify is not evidence of guilt. It is entirely up to the defendant, in every criminal trial, whether or not to testify. He has an absolute right, founded on the Constitution, to remain silent. You must not draw any inference of guilt from the fact that the defendant did not testify.

(N.T., July 19, 1990, p. 669). The Appellant's argument that the use of the word "failure" was improper because it connoted something less than expected and belittled his right to remain silent is meritless. The trial judge's use of the common phrase "failure to testify" to describe the Appellant's right to exercise his right against self-incrimination cannot reasonably be interpreted to demean his constitutional right.

■ The Appellant claims that the trial counsel was ineffective for failing to object to the following charge to the jury:

Ladies and gentlemen, during the course of this proceeding, you heard both the Commonwealth's attorney and the defense attorney objecting to evidence. In some instances, I ruled that certain evidence was not admissible. With respect to this evidence, you are not to consider what the evidence might have been, what it was, or even why it was not admissible. Those were questions of law, in which I applied the proper law, and I can tell you that, under our law, the evidence attempting to be introduced, which was excluded, could not be admitted into evidence. Therefore, you are to draw no negative inferences as to any evidence I have excluded from being admissible at this trial.

(N.T., July 19, 1990, pp. 669–70). The Appellant states that the charge could have lead the jury to believe that there was more evidence than it had heard, but that the trial court had excluded it. The Appellant then reasons that since the only side presenting evidence in any quantity was the Commonwealth, this instruction reminded the jury that there was even more evidence than it had heard.

Not surprisingly, the Appellant offers no authority to support his claim that the jury charge was improper. We find that trial counsel was not ineffective for failing to object to the charge, or for requesting the charge. The record demonstrates that trial counsel was tenacious in defending the Appellant. During the course of the trial, defense counsel successfully challenged attempts by the Commonwealth to introduce evidence that was not provided to the Appellant during pre-trial discovery. There were numerous sidebar conferences during which objections to evidence were addressed. In one instance, the Commonwealth withdrew a witness from the stand after defense counsel objected to the use of the witness as an expert. The trial judge's charge fairly apprised the jury that it was not to speculate on the nature of the evidence that was excluded or to allow the excluded evidence to enter into the deliberations.

### III. ALLEGATIONS OF ERROR
### IN THE PENALTY PHASE

The Appellant was sentenced to death after the jury determined that the two aggravating circumstances outweighed the mitigating circumstance that the Appellant had no convictions since 1971. The Appellant challenges the death sentence on the basis that the prosecutor's comments during his closing argument in the penalty phase were prejudicial. The prosecutor stated:

[Defense counsel] is going to get up, and he is going to talk to you. I say to you now, that anything he says—he is going to have to—he has no choice—he is going to have to ask you to give the wrong sentence for the wrong reason, because the law is against him, and the law is not on his side.

I suggest to you that he is going to have to try and get you to forget about the law, and to forget about the oath you took, and to break the oath you took. I have faith in you. I have faith in your strength. I have faith in your courage. I have faith in your will, the will inside each of you to follow through with your oath. I have faith, ladies

and gentlemen of the jury, in you, that you will, no matter how unpleasant it is, that you will do what the law requires in this case.

(N.T., July 23, 1990, p. 823).

In a sidebar conference held after the prosecutor had concluded, defense counsel objected to the prosecutor's remarks and moved for a mistrial. The trial judge denied the motion for a mistrial, but indicated that she would give a cautionary instruction to the jury. The trial judge instructed the jury as follows:

THE COURT: Ladies and gentlemen, you heard the district attorney, in his closing remarks, characterize the potential closing statement of the defense as containing, quote, the wrong reasons or wrong statements. I consider that the use of that word, "wrong," is very improper, and I'm admonishing you to disregard it.

Remember, I have told you before, the remarks of counsel are not evidence. You are to consider their arguments only insofar as it makes sense and comports with what you recall the evidence to be. Certainly, just because he says— [the prosecutor] says that [defense counsel's] arguments are wrong, that's improper, and it certainly doesn't make his statements wrong, because we don't even know what he is going to say yet.

So, you have to listen with an open mind. I instruct you to disregard that characterization.

(N.T., July 23, 1990, pp. 824–25).

The prosecutor's remarks were improper and should not have been spoken. Even where the language of the prosecutor is intemperate, uncalled for and improper, a new trial is not necessarily required. *Commonwealth v. Stoltzfus,* 462 Pa. 43, 337 A.2d 873 (1975). The effect of such remarks depends upon the atmosphere of the trial, and the proper action to be taken is within the discretion of the trial judge. 462 Pa. at 61, 337 A.2d at 882. We conclude that the trial judge did not abuse her discretion in denying the motion for a mistrial and the cautionary instructions that she gave were

adequate to dissipate the potential prejudice of the prosecutor's remarks.

Finally, the Appellant asserts that trial counsel was ineffective for failing to object to the trial court's charge that permitted the jury to impose a death sentence upon finding that the aggravating circumstances outweighed the mitigating circumstances. The Appellant acknowledges that this argument was considered and rejected by this Court in *Commonwealth v. Zettlemoyer*, supra, but urges us to reconsider our decision. In *Zettlemoyer*, we held that the provision of the death penalty statute that requires the jury to determine whether the aggravating circumstances outweigh the mitigating circumstances, 42 Pa.C.S.A. § 9711(c)(iv), is not unconstitutionally vague. We decline to reconsider this issue.

We are obligated to review the record in this case and to insure that the death sentence rendered by the jury is not excessive or disproportionate to the penalty imposed in similar cases. 42 Pa.C.S. § 9711(h)(3). We rely upon the information accumulated by the Pennsylvania Death Penalty Study to make such a determination. After a review of the information, we have determined that the sentence of death is not excessive or disproportionate.

The judgment of sentence is affirmed. The Prothonotary of the Supreme Court shall transmit to the Governor a full and complete record of the death sentence in accordance with 42 Pa.C.S.A. § 9711(i).

LARSEN, J., did not participate in the consideration or decision of this case.