J-A08017-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
  :   PENNSYLVANIA
  :
             v.   :
  :
  :
MOHAMED DRIDI   :
  :
           Appellant   :   No. 1926 EDA 2024

Appeal from the PCRA Order Entered July 3, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0008768-2016

BEFORE: LAZARUS, P.J., McLAUGHLIN, J., and SULLIVAN, J.

MEMORANDUM BY McLAUGHLIN, J.:         **FILED JULY 28, 2025**

Mohamed Dridi appeals from the order dismissing his Post Conviction Relief Act ("PCRA") petition. *See* 42 Pa.C.S.A. §§ 9541-9546. He claims his PCRA counsel was ineffective for failing to raise claims of trial counsel's ineffectiveness. We reverse in part and remand for further proceedings.

The facts underlying Dridi's convictions are as follows:

> On April 10, 2016, Special Agent Eric Barlow (Agent Barlow) of the Pennsylvania Office of the Attorney General (OAG) utilized the office's peer-to-peer file sharing program to download a file containing known child pornography. Agent Barlow identified the Internet Protocol (IP) address that had shared the file and obtained a subpoena for the subscriber information. Verizon's records indicated that Dridi was the owner of the IP address and provided his address. The OAG confirmed through PennDOT and other records that Dridi was the resident of the address in question.
>
> Subsequently, on August 2, 2016, Agent Barlow applied for a search warrant for the address. In the Affidavit of Probable Cause (Affidavit) attached to the search warrant application, Agent Barlow described his investigation in

detail. He explained that peer-to-peer file sharing programs "allow groups of computers, using the same file sharing network and protocols, to transfer digital files from one computer system to another while connected to a network, usually on the Internet." Affidavit at 1. The peer-to-peer file sharing programs allow users to make their digital libraries available to other users and are commonly used to disseminate child pornography. *Id.* Peer-to-peer file sharing programs can download a single file from multiple computers; however, the program used by the OAG downloads an entire file from a single computer and identifies that device's IP address for investigation. *Id.* at 2.

During his investigation, Agent Barlow made a direct connection to a device at an identified IP address and downloaded a file containing child pornography. *Id.* at 3. The device was using uTorrent 3.4 software to share the file. *Id.* Agent Barlow's software logged the start and end time for the download, the file name and size, and the IP address for the computer sharing the file. Agent Barlow then used the American Registry of Internet Numbers to determine that the IP address was provided by Verizon and issued a subpoena for the subscriber information. As noted above, Verizon complied with the subpoena and identified Dridi as the subscriber and provided his home address and contact information.

The Affidavit further explained that files may be stored in "free space or slack space" on a hard drive long after it has been deleted by a user, and a computer may also keep records of deleted data and files that were viewed through the internet. *Id.* at 4. Thus, it is possible for investigators to recover files and data that had been deleted or viewed months or years prior. *Id.* Agent Barlow averred that "searching computerized information for evidence or instrumentalities of crime commonly requires investigators to seize all of a computer system's input/output peripheral devices, related software, documentation, and data security devices (including passwords) so that a qualified computer expert can accurately retrieve the system's data in a laboratory or other controlled environment." *Id.* at 5. It was necessary to search not just computers, but all magnetic storage devices, external storage devices, and "computing systems sometimes referred to as central processing units (CPU)." *Id.*

Based on all of this information, the application for the search warrant specified the items to be searched for and seized as follows:

> All computer hardware, including, but not limited to, any equipment which can collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, optical or similar computer impulses or data. Any computer processing units, internal and peripheral storage devices (such as fixed disks, external hard disks, discs, backup media, flash media, and optical storage devices), peripheral input/output devices (such as keyboards, printers, scanners, video displays, switches, and disc/media readers), and related communication devices such as network/internet devices, cables, and connections, recording equipment, as well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware. These items will be seized and then later searched for evidence relating to the possession and/or distribution of child pornography.

Search Warrant, 8/2/16, at 1-2. Agents from the OAG executed the search warrant and seized three laptop computers and four cell phones from the residence. These items were seized from a room in the house that Dridi identified to agents as his bedroom.

Videos, images, internet search history terms, and other indicia of child pornography were recovered from one of the laptops and three of the cell phones. [(These cell phones were all smartphones. "A smartphone is a modern day cellular telephone with computer-like capabilities." *Commonwealth v. Smith*, 136 A.3d 170, 171 n.2 (Pa.Super. 2016))]. Several of the images of child pornography were synced across multiple cell phones through a shared Gmail account. The laptop identified Dridi as the system owner, with "Ali PC" as the laptop name and "Ali" as the username. The laptop also contained a picture

of Dridi's green card and Social Security card. All images and videos were located in "unallocated space" on the devices, indicating that the user had deleted the files from the allocated space on the devices but they had been retained elsewhere by the system. The uTorrent 3.4 software that uploaded the video in April 2016 was not found on any of the devices.

*Commonwealth v. Dridi*, No. 723 EDA 2019, 2020 WL 3432711, at *1-2 (Pa.Super. filed June 23, 2020) (unpublished mem.) (footnotes omitted), *appeal denied*, No. 357 EAL 2020 (Pa. filed Feb. 18, 2021).

A jury convicted Dridi of dissemination of child pornography, 15 counts of possession of child pornography, and one count of criminal use of a communication facility. This was Dridi's second trial. His first trial had ended in a mistrial because the jury was unable to reach a unanimous verdict. The court sentenced him to an aggregate term of five to 10 years' incarceration, followed by seven years of reporting probation. We affirmed the judgment of sentence, and our Supreme Court denied allowance of appeal. **See id.**

Dridi filed the instant, timely PCRA petition in August 2021 raising claims of ineffective assistance of trial and appellate counsel. The court dismissed the petition and Dridi appealed. On appeal, for the first time, he raised two issues of PCRA counsel's ineffectiveness. He claimed that PCRA counsel was ineffective for failing to raise trial counsel's failure to hire the expert from his first trial. He also claimed PCRA counsel was ineffective in failing to raise trial counsel's repeated references to Dridi's pre-arrest, post-**Miranda**[1] silence. This Court remanded for the PCRA court to consider the claims that PCRA

_____

[1] **Miranda v. Arizona**, 384 U.S. 436 (1966).

- 4 -

counsel was ineffective. ***See Commonwealth v. Dridi***, No. 880 EDA 2022, 2023 WL 3736433 at *9 (Pa.Super. filed May 31, 2023) (unpublished mem.).

Upon remand, the court held a hearing where PCRA and trial counsel testified. Trial counsel testified that she brought up Dridi's silence to show the jury that his actions "were the actions of an innocent person, someone who had no idea that this [child pornography] was on his devices." N.T., PCRA Hearing, 2/29/24, at 90-91. She explained that her strategy was to use Dridi's silence to his advantage. She said she pointed out that Dridi had worked in the court system as an interpreter, understood the court process, and argued that "most normal people, when they don't know what's happening, are going to say, 'You know what? I want to talk to a lawyer.'" ***Id.*** at 70.

Trial counsel testified that while she wanted the same expert who testified at the first trial to testify at the second trial, her supervisor at the public defender's office did not agree. She said her supervisor had reviewed the first expert's testimony and found it not effective. ***Id.*** at 76-77. She also explained that it was not in the public defender's budget to hire the expert. ***Id.*** at 17, 75-77. Counsel therefore determined to use an expert from a digital forensic investigative company that her office had used previously in other cases. ***Id.*** at 23, 31-32, 75-78.

PCRA counsel testified that he did not raise an ineffectiveness claim about hiring the expert used at the first trial because Dridi was indigent and "if Mr. Dridi wasn't able to afford to retain private counsel [for the retrial], he's also not able to retain the expert that private counsel chooses to use for Mr.

Dridi." *Id.* at 45. Counsel believed that the second expert testified favorably for Dridi. Counsel also testified that the argument around the use of Dridi's pre-arrest silence could "cut both ways. I understand how they can be raised as ineffectiveness. But also I mean it's not necessarily indicative of guilt to be distrustful of the police." *Id.* at 60.

The court dismissed Dridi's PCRA petition, determining that he failed to prove his claims of trial counsel's ineffectiveness and as such failed to establish PCRA counsel's alleged ineffectiveness. This timely appeal followed.

Dridi raises the following claims:

I. Whether original PCRA counsel provided the ineffective assistance of counsel in failing to allege that trial counsel provided the ineffective assistance of counsel in failing to retain a competent computer expert for trial sufficiently in advance of trial where the expert who testified at the prior trial provided critical testimony which dramatically undercut the prosecution's ability to prove that [Dridi] knowingly possessed or distributed child pornography and that expert would have testified similarly at the retrial[?]

II. Whether prior PCRA counsel provided the ineffective assistance of counsel in failing to claim that trial counsel provided the ineffective assistance of counsel by repeatedly informing the jury that once the police confronted [Dridi] with a search warrant and read him his *Miranda* warnings, he refused to give a statement, refused to sign the *Miranda* form acknowledging that he received his rights, and asked to speak with an attorney?

Dridi's Br. at 4.

Our standard of review of the dismissal of a petition for relief under the PCRA is well established:

The standard of review of an order dismissing a PCRA petition is whether that determination is supported by the evidence of record and is free of legal error. The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record.

*Commonwealth v. Cruz*, 223 A.3d 274, 277 (Pa.Super. 2019) (citations and quotation marks omitted). "We apply a *de novo* standard of review to the PCRA court's legal conclusions." *Commonwealth v. Davis*, 326 A.3d 988, 992 (Pa.Super. 2024) (citation omitted).

Counsel is presumed effective. *Commonwealth v. Pitt*, 313 A.3d 287, 293 (Pa.Super. 2024). To overcome this presumption, a petitioner claiming ineffectiveness must show by a preponderance of the evidence that:

(1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's action or failure to act; and (3) the petitioner suffered prejudice as a result of counsel's error, with prejudice measured by whether there is a reasonable probability that the result of the proceeding would have been different.

*Id.* (quoting *Commonwealth v. Johnson*, 236 A.3d 63, 68 (Pa.Super. 2020) (*en banc*)). Regarding the reasonable basis prong, we do "not question whether there were other more logical courses of action which counsel could have pursued; rather, we must examine whether counsel's decisions had any reasonable basis." *Commonwealth v. Chmiel*, 30 A.3d 1111, 1127 (Pa. 2011) (citation omitted). A petitioner shows that counsel's strategy lacked a reasonable basis where the petitioner establishes "that 'an alternative not chosen offered a potential for success substantially greater than the course

- 7 -

actually pursued.'" ***Id.*** (quoting ***Commonwealth v. Williams***, 899 A.2d 1060, 1064 (Pa. 2006)).

For the prejudice prong, the petitioner must demonstrate "that there is a reasonable probability that the outcome of the proceedings would have been different but for counsel's ineffectiveness." ***Id.*** at 1127-28. "This does not mean a different outcome would have been more likely than not; a reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceeding." ***Commonwealth v. Jones***, 210 A.3d 1014, 1019 (Pa. 2019) (cleaned up).

For a layered claim of ineffective assistance of counsel, the petitioner must satisfy each prong of the test as to PCRA counsel's representation. ***See Commonwealth v. Dennis***, 17 A.3d 297, 302 (Pa. 2011). A petitioner claiming PCRA counsel's ineffectiveness in failing to raise trial counsel's error satisfies the arguable merit prong by pleading and proving the three prongs related to trial counsel's ineffectiveness. ***See id.***

Dridi claims that the PCRA court erred in rejecting his claim that PCRA counsel was ineffective for not challenging trial counsel's failure to retain a qualified expert before trial. He also claims the court erred in rejecting his claim of PCRA counsel's ineffectiveness for trial counsel's failure to hire the expert from Dridi's first trial. He maintains trial counsel hired the expert from the other company after his trial had begun and therefore the expert did not have the necessary time to review the case. He also argues that the expert's testimony was unhelpful and tracked that of the Commonwealth's expert.

Looking back at his first trial, he claims that the expert in that case had significant qualifications and examined the evidence. Dridi further alleges that he suffered prejudice because the prior expert's testimony at his new trial could have led to an acquittal.

To prevail on a claim of ineffectiveness for failure to call a witness, a petitioner must plead and prove that:

> (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial.

*Commonwealth v. Selenski*, 228 A.3d 8, 16 (Pa.Super. 2020) (citation omitted).

Here, counsel had a reasonable basis for not using the same expert as at the first trial. She explained that her superior had determined that the first expert's testimony had not been effective and they decided to use an expert from an organization they had worked with before. Moreover, Dridi fails to satisfy the second prong. Trial counsel testified that though she desired to hire the same expert, it was not within the budget for the Public Defender's office. As such, the previous expert was effectively unavailable to testify for Dridi. To the extent Dridi argues that counsel was ineffective for failing to hire a specific expert, as the PCRA court pointed out, "[i]t is well-settled that 'an indigent defendant does not have the right to choose his own expert.'" Rule 1925(a)

Opinion, filed 9/11/24, at 8 (quoting **Commonwealth v. Melvin**, 172 A.3d 14, 24 (Pa.Super. 2017)). The court committed no error in rejecting this claim.

Next, Dridi claims that PCRA counsel was ineffective for failing to raise trial counsel's ineffectiveness for repeatedly referencing his pre-arrest silence. He states that referencing post-**Miranda** silence is prohibited and prejudicial. Dridi alleges that trial counsel's referencing his silence served no legitimate purpose other than to suggest his guilt. He further claims that counsel's failure to exclude such evidence caused him significant prejudice because the case was close, no one considers remaining silent as evidence of innocence, and "there was no direct evidence that he had knowingly downloaded or shared the files or even opened them[.]" Dridi's Br. at 49.

The PCRA court concluded that Dridi's underlying claim of trial counsel's ineffectiveness failed. It determined that "trial counsel's actions . . . were designed to further [Dridi's] interests," noting that her strategy was to "[m]ake sure the jury underst[oo]d [Dridi's] conduct was the conduct of an innocent person, not someone who was trying to hide things, duck, and dodge, and avoid the police." Rule 1925(a) Opinion at 5 (quoting N.T., PCRA Hearing, at 85).

Every person has the right to remain silent: "(1) before arrest; (2) after arrest but before the warnings required by **Miranda** have been given; (3) after **Miranda** warnings have been given; and (4) at trial." **Commonwealth**

*v. Molina*, 33 A.3d 51, 57 (Pa.Super. 2011) (*en banc*), *aff'd*, 104 A.3d 430 (Pa. 2014) (plurality).

Our Supreme Court has examined the implications of the prosecution presenting evidence of a defendant's silence. "[A] mere reference to pre-arrest silence does not constitute reversible error where the prosecution does not exploit the defendant's silence as a tacit admission of guilt." ***Commonwealth v. Adams***, 104 A.3d 511, 512–13 (Pa. 2014) (plurality). In ***Adams***, the prosecution elicited testimony from an officer regarding the defendant's pre-arrest silence, which the Court determined was used to "recount the sequence of the investigation, in particular, how the DNA sample was obtained from [Adams]." ***Id.*** at 518. The Court concluded this "did not unconstitutionally burden [Adams'] right against self-incrimination, because the reference was contextual and brief and did not highlight [Adams'] silence as evidence of guilt." ***Id.*** However, the Court warned "prosecutors to tread carefully when referencing a defendant's refusal to speak to officers, limiting such reference to the description of the investigation or other relevant purpose." ***Id.***

Conversely, our Supreme Court has determined the prosecution's use of a defendant's pre-arrest silence as substantive evidence of guilt to be impermissible. In ***Molina***, during closing argument, the prosecution characterized Molina's pre-arrest silence as "most telling" and asked the jury "why" Molina would refuse to cooperate with police, instructing them to "factor

- 11 -

that in when you're making an important decision in this case as well." 104 A.3d at 452-53.

The Court found that the prosecutor's statements, while not evidence, implied Molina's guilt and were not harmless. *Id.* at 453. Moreover, the Court acknowledged that our courts made a distinction between the mention of pre- and post-arrest silence in determining whether a defendant's right to silence had been violated. *Id.* at 450. However, the Court concluded that the timing of the silence and whether it occurred before or after *Miranda* warnings was irrelevant to determining whether the prosecution's use of a defendant's silence as substantive evidence violated the defendant's right to silence. *Id.*[2]

A third case is particularly instructive. In *Commonwealth v. DiNicola*, 866 A.2d 329 (Pa. 2005), defense counsel called an officer to testify during the defense's case in chief and asked, "Now, was anything done by you— anything—did you look in any other direction to see if these charges were unfounded?" *DiNicola*, 866 A.2d at 332. The officer responded that he contacted DiNicola, but counsel interrupted, changing the focus away from DiNicola's response. *Id.* On cross-examination, the Commonwealth elicited testimony from the officer indicating that DiNicola "declined the request for an

---

[2] *See also Commonwealth v. Rivera*, 296 A.3d 1141, 1152-57 (Pa. 2023) (limiting analysis of prosecution's references to defendant's post-arrest, post-*Miranda* silence to cases addressing post-arrest silence and highlighting Superior Court's error in relying on pre-arrest silence cases in determining outcome of case).

interview, and that counsel for [DiNicola] later contacted the trooper and advised that [DiNicola] denied the allegations but would invoke his right to remain silent in any discussion with law enforcement personnel." ***Id.***

On appeal, DiNicola claimed ineffective assistance of trial counsel for opening the door to the Commonwealth's eliciting testimony about his pre-arrest silence. Our Supreme Court found that DiNicola had failed to show prejudice. It examined the context and found no prejudice because the reference was limited and was not used in a way "that was likely to burden [DiNicola's] Fifth Amendment right or to create an inference of an admission of guilt":

> Taken at face value, the revelation of silence in this case was limited to its context. The trooper revealed the exchange with [DiNicola] wherein a denial of wrongdoing was immediate, and the decision to engage in further discussion with the trooper was declined. In this situation, the reference to silence and its Fifth Amendment source was circumspect; it was not used in any fashion that was likely to burden [DiNicola's] Fifth Amendment right or to create an inference of an admission of guilt.
>
> Reviewing the record as a whole, we are compelled to conclude that [DiNicola] has failed to establish that the outcome of this case would have been different absent the decision of trial counsel that opened the door to this testimony. Thus, [DiNicola] was not entitled to relief on the second claim of ineffectiveness.

***Id.*** at 337.

We think Dridi has established all three elements of his claim that trial counsel was ineffective for raising Dridi's pre-arrest, post-***Miranda*** silence. Although this case differs from ***Adams***, ***Rivera***, and ***Molina*** in that it does

- 13 -

not involve the prosecution's eliciting of testimony about the defendant's silence, we find guidance in those cases. Each highlights a crucial factor: whether the circumstances of the reference to silence raise an implication of guilt.

We also find guidance in *DiNicola* as the facts of the instant case involve a claim that defense counsel was ineffective as the person responsible for bringing the defendant's silence into the case. In determining that DiNicola did not demonstrate prejudice from counsel's actions, the Court considered whether the testimony regarding DiNicola's silence was limited and whether the context of its use raised an inference of guilt. *DiNicola*, 866 A.2d at 337. Thus, *DiNicola*, like *Adams*, *Rivera*, and *Molina*, again highlights the crucial question of whether there was an implication of guilt from the reference to the defendant's silence.

Herein, defense counsel made remarks during her opening statement about, and later elicited testimony regarding, Dridi's pre-arrest, post-*Miranda* silence. Counsel's opening statement referenced the defense claim of Dridi's innocence. *See* N.T., Trial, 9/25/18, at 41 ("This is about Mr. Dridi being an innocent man"); 44 ("It's about being an innocent man"); 51 ("He's an innocent man"). She also commented on Dridi's pre-arrest silence during the search of his home, arguing that his silence was the conduct of an innocent person:

> Somebody knocked on the door and he was trying to get up
> to come down to open the door and they didn't give him

- 14 -

enough time to. Boom, they break the door open. You don't hear evidence that he tried to run, hide, dodge, none of that. What are you doing in my house? What can I do? Oh, my God. Sit down there. We have a search warrant. Okay. Where's your room? Right up there. **You want to give us a statement?** I don't know what you're talking about. **No, I want a lawyer.** That's what he did. Is that what you expect? **Are those the acts of a person who is this prolific child porn viewer, possessor, and disseminator? No, they're not.**

*Id.* at 46. (emphasis added).

During the Commonwealth's case-in-chief, defense counsel twice brought up Dridi's silence on cross-examination of police officers. First, an officer testified on direct that during the search of Dridi's home, he read Dridi his *Miranda* rights. The officer did not comment nor did the Commonwealth question whether Dridi invoked his right to remain silent. *See* N.T., Trial, 9/26/18, at 44. It was only during cross-examination of this officer that Dridi's silence came up. Defense counsel reviewed the *Miranda* waiver form and noted that Dridi did not sign the form: "When Mr. Dridi didn't sign the form, did you tell him that you would use that fact against him if he came to court?" *Id.* at 98. The Commonwealth objected, but the court did not rule on the objection. Counsel rephrased her question, asking, "There's nowhere on this form that tells Mr. Dridi, if you don't sign this, it's going to hurt you; can we agree to that, nowhere on this form?" *Id.*

Defense counsel injected testimony about Dridi's silence during the cross-examination of a second officer. On direct examination, the Commonwealth asked the officer if Dridi was informed of his *Miranda* rights.

The Commonwealth did not inquire about, and the officer did not comment on, whether Dridi invoked his right to silence. *Id.* at 181. But on cross-examination, defense counsel read a portion of an investigative report that mentioned Dridi's refusal to be interviewed or sign the *Miranda* waiver.

> Q [Trial Counsel]: Okay. And so that's what we're talking about thus far. Go to Page 3 for me. Tell me if I'm reading what appears on Paragraph 1 correctly. "At approximately 8:25, Mohamed Dridi was informed of his rights per *Miranda*, to which he stated he understood. Mohamed Dridi was informed he was not under arrest, free to leave, and could stop the interview at any time. Mohamed Dridi stated he understood and **refused to be interviewed** by the affiant," the affiant being Agent Barlow, correct or affiant, correct?
>
> A [Agent Block]: Correct.
>
> Q: "He also **refused to sign the waiver form**. This took place in the kitchen of his residence with Mohamed Dridi seated uncuffed. Special Agent Block was also present." Did I read that correctly?
>
> A: You did.

*Id.* at 189-190 (emphasis added)

Defense counsel's injection of Dridi's pre-arrest silence into the case was not circumspect or limited to its context. Nor was it done in a way that was unlikely to create an inference of an admission of guilt. *See DiNicola*, 866 A.2d at 377. Instead, defense counsel repeatedly brought it up in the cross-examination of officers who were testifying about searches and questioning in furtherance of the investigation of the instant case.

We also find that counsel lacked any reasonable basis in presenting this evidence. Dridi demonstrated that an alternative approach, specifically

- 16 -

omitting any mention of his silence, offered a substantially greater chance of success. **See Chmiel**, 30 A.3d at 1127. Although counsel maintained that it forwarded her theory of the case of Dridi's innocence, we do not think that was reasonable. It was not reasonable to think that Dridi's silence would show that he was "not someone who was trying to hide things, duck, and dodge, and avoid the police." Rule 1925(a) Opinion at 5 (quoting N.T., PCRA Hearing, at 85).

Finally, Dridi has established prejudice. As previously stated, whether there is an implication of guilt is a factor to be considered in determining whether a defendant's right to silence has been violated. Here, counsel's actions likely did no more than foster an inference of guilt. Our Supreme Court has acknowledged that "most laymen" interpret the assertion of the right to silence not as a declaration of innocence but rather "as a badge of guilt." **Commonwealth v. Turner**, 454 A.2d 537, 539 (Pa. 1982) ("most laymen view an assertion of the Fifth Amendment privilege as a badge of guilt") (quoting **Walker v. United States**, 404 F.2d 900, 903 (5th Cir. 1968)). **See also Commonwealth v. Wright**, 961 A.2d 119, 143 (Pa. 2008) ("[T]his Court vigilantly protects the right to remain silent and recognizes references to an accused's exercise of this right may jeopardize the presumption of innocence in the jury's mind"). While counsel asserted that she believed Dridi's silence indicated his innocence, Dridi invoked his right to remain silent while police executed a warrant at his home for devices containing child pornography. There is a reasonable probability that the jury inferred guilt from

Dridi's silence. Dridi has established that but for counsel's actions, the inference of guilt would not have been before the jury, and confidence in the outcome is undermined.

Since the PCRA court initially determined that Dridi did not satisfy all prongs for his underlying claim of trial counsel's ineffectiveness, it did not address whether he satisfied all prongs of his claim against PCRA counsel. Based on our conclusion that Dridi has satisfied all prongs of his claim against trial counsel, we conclude that the PCRA court erred in denying Dridi's PCRA petition based on its conclusion that this underlying claim lacked merit. We therefore remand to the PCRA court to determine whether Dridi has satisfied all prongs regarding his claim against PCRA counsel.

Order reversed in part. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/28/2025